# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALAIN HENSLEY, | CASE NO. 3:23-cv-05159-DGE |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND TO COMPEL ARBITRATION (DKT. NOS. 13, 14, 21) |
| v. | |
| TD AMERITRADE INC. et al., | |
| Defendants. | |

## I  INTRODUCTION

This matter comes before the Court on the Defendants' motions to dismiss and to compel arbitration. (*See* Dkt. Nos. 13, 14, 21.)  For the reasons discussed herein, the Court grants each of the Defendants' motions to dismiss.

## II      BACKGROUND

Plaintiff Alain Hensley, acting pro se, brings suit against a series of financial entities and regulators in response to alleged fraud and other misdeeds.[1]  Mr. Hensley alleges he is a shareholder of Meta Materials, Inc. and owner of class A preferred shares (listed under "MMTLP") of the company.  (Dkt. No. 3 at 4.)  He purchased these preferred shares from one of the Schwab Entities in 2022.  (*Id.* at 4, 6.)  As alleged, these shares were "unlawful securities" and were "utilized to reduce the stock price of MMTLP."  (*Id.* at 5.)  Mr. Hensley also alleges he was informed he could trade his MMTLP shares "up until and thru December 12, 2022, or wait until MMTLP went private on or about December 14, 2022, and receive Next Bridge Hydrocarbons ('NBH') shares" in exchange for his MMTLP shares.  (*Id.* at 6.)  Despite this representation, Mr. Hensley experienced trouble in trading these shares.  (*Id.* at 7.)  Mr. Hensley alleges he was ultimately unable to transfer any of his MMTLP shares.  (*Id.* at 7–8.)

Though difficult to follow, Mr. Hensley appears to allege that some combination of Defendants were involved in the creation and sale of "Synthetic illegal shares" as part of an attempt to cover unlawfully short positions in MMTLP stock.[2]  (*Id.* at 9–10.)  He also alleges

---

[1] The named defendants are TD Ameritrade, Inc. ("TDA"), the Schwab Entities (Charles Schwab & Co., Inc., and Schwab Holdings, Inc.), the GTS Defendants (GTS Equity Partners LLC, GTS Execution Services LLC, GTS Securities, LLC, and Global Trading Systems, LLC), and Financial Industry Regulatory Authority, Inc. ("FINRA").  Mr. Hensley also appears to have erroneously named two non-extant entities in his complaint caption (Waterhouse Securities, Inc. and TD Waterhouse Investor Services, Inc.) and GTS Mischler, which the GTS Defendants assert is just a trade name for GTS Securities, LLC (*see* Dkt. No. 14 at 2).  Mr. Hensley also named 200 doe defendants ("Doe Defendants").

[2] In a short sale, a trader sells a security that they do not own and have typically borrowed from another on behalf of the seller.  *See* 17 C.F.R. § 242.200(a) ("The term short sale shall mean any sale of a security which the seller does not own or any sale which is consummated by the delivery of a security borrowed by, or for the account of, the seller.").  "To sell short, [] [a] trader typically borrows the shares from a broker who obtains them either from its own reserves or from an external source. The trader then sells the borrowed shares in the open market."  *See S.E.C. v. Colonial Inv.*

000003

1   "Defendants helped facilitate the shorting of the MMTLP shares up through at least 12-8-2022."

2   (*Id.* at 10.)  On this same date, FINRA halted trading of MMTLP.  (*Id.*)  As a result of this

3   trading halt, "Defendant has denied Plaintiff the ability to sell the MMTLP shares for a profit and

4   decide whether he wanted to proceed into the private NBH."  (*Id.* at 11.)

5          Mr. Hensley filed an initial complaint on February 28, 2023 against the Defendants. (Dkt.

6   No. 1.)  The initial complaint, however, was not served on the Defendants and Mr. Hensley

7   subsequently "amended" this complaint and served summons on the Defendants on April 21,

8   2023.  (*See* Dkt. Nos. 3, 4.)  The amended complaint, which the Court treats as the operative

9   complaint, alleges Defendants violated various federal criminal laws and committed deceptive

10  trade practices under Nebraska state law.  It also alleges that FINRA failed to properly regulate

11  the other Defendants and is involved in the purported fraud.  (Dkt. No. 3 at 17–18.)  Mr. Hensley

12  seeks monetary damages, injunctive relief, and demands an accounting of Defendants' books and

13  records pursuant to Delaware law.[3]  (*Id.* at 53–59.)

14         FINRA and the GTS Defendants filed their motions to dismiss for failure to state a claim

15  on June 20, 2023.  (Dkt. Nos. 13, 14.)  Mr. Hensley filed a late response to these motions on July

16  14, 2023, the noting date for the initial motions.  (*See* Dkt. Nos. 30, 31.)  Both FINRA and the

17  GTS Defendants filed reply briefs on July 14.  (Dkt Nos. 28, 33.)  FINRA subsequently filed an

18  additional reply brief on July 28.  (Dkt. No. 35.)  TDA and the Schwab Entities separately filed

19  their motion to compel arbitration and to stay or dismiss this case on June 26, 2023.  (Dkt. No.

20  21.)  Mr. Hensley filed a timely response to this motion on July 13 (Dkt. No. 27) and TDA and

21  _____

22  *Mgmt. LLC*, 659 F. Supp. 2d 467, 470 (S.D.N.Y. 2009), *aff'd*, 381 F. App'x 27 (2d Cir. 2010) (citation omitted).

23  [3] Mr. Hensley did not name Meta Materials, Inc. or any successor as a defendant in this suit and it
    is unclear from the pleadings which company's books and records Mr. Hensley demands to
24  inspect.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND TO COMPEL ARBITRATION (DKT.
NOS. 13, 14, 21) - 3

1    the Schwab Entities filed their reply on July 21 (Dkt. No. 34).  On September 25, 2023, FINRA

2    filed a Notice of Supplemental Authority.  (Dkt. No. 38.)

3                                 **III       DISCUSSION**

4        **A.  Motions to Dismiss for Failure to State a Claim**

5            a.   Legal Standard

6        FINRA and the GTS Defendants move to dismiss Mr. Hensley's claims against them for

7    failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

8        "Under Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true

9    and construes them in the light most favorable to the nonmoving party."  *Nw. Env't Advocs. v.*

10   *U.S. Dep't of Com.*, 283 F. Supp. 3d 982, 990 (W.D. Wash. 2017).  "To survive a motion to

11   dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

12   relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

13   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility is not probability, but to survive a

14   motion to dismiss a plaintiff must plead more than conclusory statements and recitations of the

15   legal elements of a cause of action.  *Ashcroft*, 556 U.S. at 678.

16           b.   FINRA's Motion to Dismiss

17               i.   *Regulatory Immunity*

18       The Court finds that FINRA is entitled to regulatory immunity and therefore Mr. Hensley

19   fails to state a claim.

20       FINRA argues that Mr. Hensley has failed to state a claim as against them because they

21   are entitled to absolute regulatory immunity by virtue of their role as a private-self regulatory

22   entity ("SRO").  (Dkt. No. 13 at 12–14.)  Mr. Hensley, in response, argues FINRA is not entitled

23   to immunity because "[c]ommitting fraud and allowing fraud to be committed is not part of []

24

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND TO COMPEL ARBITRATION (DKT.
NOS. 13, 14, 21) - 4

1   [FINRA's] duties in fact it's the opposite."[4] (Dkt. No. 31 at 2.) Mr. Hensley also attempts to

2   distinguish his case from others involving MMTLP shares where courts have found FINRA to be

3   entitled to regulatory immunity and attempts to draw the Court's attention to communications

4   between FINRA and the SEC that were not included in his complaint. (*Id.* at 2–4.)

5       "A [] [SRO] like FINRA enjoys absolute immunity from suit for actions taken under the

6   aegis of the Securities Exchange Act of 1934's delegated authority." *Hofman v. Fid. Brokerage*

7   *Servs., LLC*, No. 223CV00881MCSPVC, 2023 WL 3872564, at *6 (C.D. Cal. May 8, 2023)

8   (cleaned up). "[S]elf-regulatory organizations have been granted immunity from suit when

9   acting in a quasi-governmental capacity." *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers,*

10  *Inc.*, 159 F.3d 1209, 1214 (9th Cir. 1998), *overruled in part on other grounds by Merrill Lynch,*

11  *Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016). Other Circuits similarly find that

12  SROs are entitled to absolute immunity under the Exchange Act when performing regulatory

13  functions. *See, e.g.*, *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 96 (2d Cir. 2007) (noting

14  that SROs are "absolutely immune from suit" for misconduct arising from "the enforcement of

15  security rules and regulations and general regulatory oversight over exchange members").

16      This immunity extends to an SRO's failure to regulate and also covers allegedly unlawful

17  actions related to the SRO's regulatory function. *See id.* at 97–98 (holding that "[u]nder our

18  precedent, the immunity protects the power to regulate, not the mandate to perform regulatory

19  functions in a certain manner. Thus, the immunity depends only on whether specific acts and

20  forbearances were incident to the exercise of regulatory power, and not on the propriety of those

21  actions or inactions."); *see also Hurry v. Fin. Indus. Regul. Auth., Inc.*, 782 F. App'x 600, 602

22

23  ─────────────
    [4] Mr. Hensley filed an untimely response to FINRA's motion, however the Court recognizes Mr.
    Hensley is pro se and does not find that his untimely filing alone constitutes an admission of the

24  merits of FINRA's arguments. *See* LCR 7(b)(2).

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND TO COMPEL ARBITRATION (DKT.
NOS. 13, 14, 21) - 5

(9th Cir. 2019) (noting that regulatory immunity under the Exchange Act extends to any actions taken by an SRO under the authority of the Act).

Mr. Hensley's allegations against FINRA appear to the Court to be solely based on FINRA's alleged regulatory failings.  Mr. Hensley asserts, for example, that "[w]hen FINRA failed to investigate this fraud case properly, it opened itself up to lawsuits from investors who realized their interests were not adequately protected."  (Dkt. No. 3 at 18.)  Mr. Hensley also alleges "[i]t is the responsibility of FINRA and the S.E.C. to take appropriate action to prevent fraud in the financial markets" and that FINRA has "epically failed" in its duty to "investigate[] complaints and take[] enforcement action against individuals or firms that violate FINRA rules and regulations."  (*Id.* at 19–20.)  Such allegations are squarely addressed at FINRA's regulatory shortcomings and FINRA is accordingly entitled to regulatory immunity.

The Court is also not convinced that Mr. Hensley's allegations are materially different than those of the cases he tries to distinguish.  *See Hofman*, No. 223CV00881MCSPVC, 2023 WL 3872564, at *2 (C.D. Cal. May 8, 2023) ("Plaintiff contends FINRA wrongfully halted trading of Meta Materials securities in December 2022, which facilitated Defendants' fraudulent scheme involving short sales by nonparties and restrained Plaintiff from selling his securities for an anticipated profit before a corporate action that ultimately left him with a 'valueless security.'"); *Tawil v. Fin. Indus. Regul. Auth., Inc.*, No. 4:22CV440-RH-MAF, 2023 WL 4353179, at *1 (N.D. Fla. May 24, 2023) ("FINRA suspended trading in shares of Metamaterials Inc. ('Meta') shortly before the shares were slated for exchange for shares of other entities. The plaintiff Roza Tawil was a Meta shareholder. She asserts FINRA suspended trading prematurely, reducing the value she and other Meta shareholders received in the exchange."); *see also Park v. Fin. Indus. Regul. Auth., Inc.*, No. 2:23CV0069-RWS, ECF No. 30, at *3 (N.D. Ga. Sept. 25,

2023) ("On December 9, 2022, . . . FINRA announced a U3 trading halt on MMTLP securities, stating that 'an extraordinary event ha[d] occurred.'").  Indeed, Mr. Hensley alleges "[h]ours after the Market Makers, facilitated by the Defendants, shorted the nonexistent MMTLP shares from   dollars to under $3 on 12-8-2022, FINRA placed an extremely rare U3 halt on trading." (Dkt. No. 3 at 10.)

Mr. Hensley's complaint alleges shortcomings by FINRA with regard to actions that fall under its regulatory powers and FINRA is therefore entitled to regulatory immunity from Mr. Hensley's claims.  Because FINRA is entitled to regulatory immunity, the Court need not address FINRA's other alternative grounds for dismissal.

### c.  GTS Defendants' Motion to Dismiss

The GTS Defendants separately move to dismiss Mr. Hensley's claims for failure to state a claim.  (Dkt. No. 14.)

In their motion to dismiss, the GTS Defendants argue that many of Mr. Hensley's claims should be dismissed because they are based on criminal statutes, regulations, or policies that do not provide a private right of action.  (*Id.* at 7.)  The GTS Defendants also argue that Mr. Hensley failed to plead sufficient facts as to "what any of the GTS Defendants (let alone each of them) allegedly did wrong, or which statutes they allegedly violated."  (*Id.* at 10.)  Additionally, the GTS Defendants argue Mr. Hensley's complaint fails to meet the heightened pleading standards for fraud under Federal Rule of Civil Procedure 9(b).  (*Id.* at 11.)

As with FINRA, Mr. Hensley filed an untimely response brief in response to the GTS Defendants' initial motion.  (*See* Dkt. No. 30.)  Mr. Hensley's response, however, raises no substantive responses to the GTS Defendants' arguments.  Mr. Hensley notes that

> [i]n my complaint I detailed how they committed the fraud, When they did it, and that the intent was there. It was very deliberate. They make a lot of claims about

not explaining with proof of this action they took against the Plaintiff however this is the purpose of discovery. I gave the shortest explanation of the situation under the circumstances, it's a very complicated situation. I showed what has happened and I will add more documentation to the fact.

(*Id.* at 3.) This general statement that he identified the GTS Defendants' wrongdoing, does not actually respond to the arguments raised. The Court agrees with the GTS Defendants that Mr. Hensley has failed to respond and therefore admits that the GTS Defendants' motion has merit. *See Rispoli v. King Cnty.*, No. C04-1500L, 2005 WL 3454409, at *1 (W.D. Wash. Dec. 16, 2005), *aff'd*, 297 F. App'x 713 (9th Cir. 2008) ("[P]laintiff failed to respond to either of these arguments and the Court interpreted this failure as an admission that defendants' legal and factual arguments had merit.").

The Court separately finds that Mr. Hensley fails to state a claim against any of the GTS Defendants as the sole allegation against the GTS Defendants is conclusory (*see* Dkt. No. 3 at 4), does not distinguish between any of the GTS Defendants, and does not provide enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**B. TDA and Schwab Entities' Motion to Compel Arbitration and to Dismiss Claims**

TDA and the Schwab Entities separately move the Court to enforce the terms of TDA's arbitration agreement with Mr. Hensley and to stay or dismiss the case. (Dkt. No. 21.)

a. Legal Standard

Section 2 of the Federal Arbitration Act ("FAA") provides that a contractual arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Congress adopted the Arbitration Act in 1925 in response to a perception that courts were unduly hostile to arbitration." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury*

1    *Constr. Corp.*, 460 U.S. 1, 24 (1983).  Accordingly, "courts must 'rigorously enforce' arbitration

2    agreements according to their terms."  *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233

3    (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

4            "[A]rbitration is a matter of contract."  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67

5    (2010). To determine whether an arbitration agreement is valid and enforceable, courts must

6    apply state law contract principles.  *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir.

7    2022).  Mr. Henley's Client Agreement with TDA provides that it is to be governed by Nebraska

8    law (*see* Dkt. No. 22 at 16) and the parties do not appear to dispute that the Court should apply

9    Nebraska law here.  The Court's role under the FAA is merely to "determin[e] (1) whether a

10   valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the

11   dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.

12   2000).  The party seeking to resist arbitration bears the burden of proving that an arbitration

13   agreement is invalid.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

14           b.  Arbitration Agreement

15           TDA and the Schwab Entities[5] argue, and Mr. Hensley does not dispute, that he signed a

16   Client Agreement as part of his application to create an account with TDA on October 21, 2022.

17   The Client Agreement with TDA specifically states it "contains a predispute arbitration clause.

18   By signing this agreement, the parties agree to be bound by the terms of the Client Agreement,

19   including the arbitration agreement located in Section 12 of the Client Agreement on page 8."

20   (Dkt. No. 22 at 6.)  Section 12 of the Client Agreement further provides as follows:

21           This Agreement contains a predispute arbitration clause. By signing an arbitration
             clause, the parties agree as follows:
22

23   _____
     [5] Mr. Hensley does not contest that TDA and the Schwab Entities are affiliates or that the
24   arbitration agreement signed with TDA applies to his claims as against the Schwab Entities.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND TO COMPEL ARBITRATION (DKT.
NOS. 13, 14, 21) - 9

- All parties to this Agreement are giving up their right to sue each other in court, including the right to jury trial, except as provided by the rules of the arbitration forum in which a claim is filed.
- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.
- The ability of the parties to obtain documents, witness statements, and other discovery is generally more limited in arbitration than in court proceedings.
- The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.
- The panel of arbitrators may include a minority of arbitrators who were or are affiliated with the securities industry.
- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.
- The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.
- No person will bring a putative or certified class action to arbitration, nor seek to enforce any predispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (1) the class certification is denied; (2) the class is decertified; or (3) the client is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate will not constitute a waiver of any rights under this Agreement except to the extent stated herein.

I agree that any controversy between you and your affiliates, any of their respective officers, directors, employees, or agents and me (including any of my officers, directors, employees, or agents) arising out of or relating to this Agreement, our relationship, any Services provided by you, or the use of the Services, and whether arising before or after the date of this Agreement, shall be arbitrated and conducted under the provisions of the Code of Arbitration of the FINRA. If any party unsuccessfully resists confirmation or enforcement of an arbitration award rendered under this Agreement, then that party shall pay all costs, attorneys' fees, and expenses incurred by the other party or parties in confirming or enforcing the award. Arbitration must be initiated by service upon the other party of a written demand for arbitration or notice of intention to arbitrate. Judgment, upon any award rendered by the arbitrator, may be entered in any court having jurisdiction.

(*Id.* at 15.)

    c.   <u>Enforceability of Arbitration Agreement</u>

000011

TDA and the Schwab Entities argue 1) that the national policy favoring arbitration requires the Court to enforce the parties' arbitration agreement (Dkt. No. 21 at 9), 2) the arbitration agreement is enforceable under Nebraska law (*id.* at 11), 3) Mr. Hensley's claims fall within the scope of the arbitration agreement (*id.* at 12), and 4) the Court should stay or dismiss Mr. Hensley's claims (*id.* at 14).

In response, Mr. Hensley does not dispute that he signed the Client Agreement.  Instead, he argues that the agreement is unconscionable.  (*See* Dkt. No. 27 at 5–8.)  Specifically, Mr. Hensley argues the agreement is unconscionable because it requires arbitration under procedures defined by FINRA, a party to this suit.  (*Id.* at 2.)  Additionally, Mr. Hensley argues that there was an imbalance of bargaining power between himself and TDA.  (*Id.* at 2–3) (noting that TDA and the Schwab Entities "know that FINRA looks the other way and they can act without impunity, imposed on consumers on a take-it-or-leave-it basis. The effect of such clauses is often to deprive or discourage consumers from enforcing their common law and statutory rights in judicial forums.").  Mr. Hensley also takes issue with the means of notice of the contract, arguing that the arbitration agreement was "buried in the fine print" (*id.* at 5), and that TDA and the Schwab Entities carry the burden of showing that his waiver of his rights to trial was "knowing" (*id.* at 8).   Finally, Mr. Hensley takes issue with the lack of discovery available in a FINRA arbitration.  (*Id.* at 6.)

Mr. Hensley has failed to show that the arbitration agreement contained in the Client Agreement is unconscionable.[6]  First, as TDA and the Schwab Entities note, FINRA will not

---

[6] The Court finds that Mr. Hensley did not dispute that all of his claims against TDA and the Schwab Entities were covered by the arbitration agreement and therefore concedes this argument has merit.  *See Freeze v. McDermott*, No. C22-1844JLR, 2023 WL 3599585, at *5 (W.D. Wash. May 23, 2023).

actually run the arbitration. Instead, FINRA's code provides that the parties to the panel both vote to choose who will arbitrate their dispute.[7] *See* FINRA RULE 12403, https://www.finra.org/rules-guidance/rulebooks/finra-rules/12403. These arbitrators are independent and any party may ask an arbitrator to recuse themselves for "good cause." *See* FINRA RULE 12406, https://www.finra.org/rules-guidance/rulebooks/finra-rules/12406; *see also Hofman*, 2023 WL 3872564, at *4 (noting that FINRA arbitrators are third-party neutrals). Lack of discovery and other procedural restrictions in FINRA arbitration is also irrelevant as the Supreme Court has made clear that the FAA "directed [] [courts] to respect and enforce the parties' chosen arbitration procedures." *Epic Sys.*, 138 S. Ct. at 1621.

Second, a mere imbalance of bargaining power is not sufficient under Nebraska law to render a contract unconscionable. Nebraska law specifically provides that "[a] written agreement to submit any existing controversy to arbitration is valid, enforceable, and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract." Neb. Rev. Stat. § 25-2602.01(a). Unconscionability is a recognized defense to the formation of a contract and the Nebraska Supreme Court has defined unconscionable as being "manifestly unfair or inequitable." *Myers v. Nebraska Inv. Council*, 724 N.W.2d 776, 799 (Neb. 2006). "Unconscionability is determined in light of all the surrounding circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print." *Parizek v. Roncalli Cath. High Sch. of Omaha*, 655 N.W.2d 404,

---

[7] The Court notes that this point also applies to Mr. Hensley's concerns about the qualifications of potential arbitrators to evaluate consumer protection claims. (*See* Dkt. No. 27 at 6.) Mr. Hensley may select an arbitrator that meets his standards and any concerns he has at this point are immaterial.

408 (Neb. Ct. App. 2002). Additionally, contracts of adhesion, contracts where one party with substantially greater bargaining presents another with a take-it-or-leave-it offer, are not automatically unconscionable under Nebraska law. *See E.E.O.C. v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 566 (8th Cir. 2007).

Here, Mr. Hensley does not dispute that he checked off the box for the Client Agreement affirming that he agreed to be bound by its terms and e-signed his name. (*See* Dkt. No. 22 at 6.) A party may only sign up for an account after reading the Client Agreement. (*See id.* at 6) ("Before we can open your account, you must read and electronically sign the TD Ameritrade Client Agreement. If you do not agree with the Client Agreement or find any part of it unacceptable, you shouldn't open your account at this time."). The Client Agreement signature section also clearly identified that it included an arbitration agreement and identified the exact section of the Client Agreement where the arbitration agreement was located. (*Id.*) The arbitration agreement itself is also clear and unambiguous. The first bullet point notes that "[a]ll parties to this Agreement are giving up their right to sue each other in court, including the right to jury trial, except as provided by the rules of the arbitration forum in which a claim is filed." (*Id.* at 15.) Finally, the arbitration agreement applies equally to "[a]ll parties" and is therefore not "one-sided," as Mr. Hensley alleges. (*Id.*) The Court cannot find under these circumstances that the Client Agreement is unconscionable.

Given that the Client Agreement is not unconscionable[8] and Mr. Hensley has not presented any other grounds to invalidate the arbitration agreement[9], the Court GRANTS TDA and the Schwab Entities' motion to compel arbitration.

### d. Dismissal or Staying the Action

Since the arbitration agreement is enforceable, the Court must decide whether to stay or to dismiss this action.

9 U.S.C. § 3 mandates that a court must stay proceedings where "the issue involved in such suit or proceeding is referable to arbitration . . . on application of one of the parties." Though § 3 only discusses stays of proceedings, the Ninth Circuit has held "a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). Since the Court finds, and Mr. Hensley does not dispute, that the arbitration agreement covers all of the claims against TDA and the Schwab Entities, the Court GRANTS TDA and the Schwab Entities' motion to dismiss and to compel arbitration.

## IV    CONCLUSION

Accordingly, and having considered the Defendants' motions, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS as follows:

1. FINRA's motion to dismiss (Dkt. No. 13) is GRANTED. Mr. Hensley's claims against FINRA are dismissed with prejudice.
2. The GTS Defendants' motion to dismiss (Dkt. No. 14) is GRANTED. Mr. Hensley's claims against the GTS Defendants are dismissed without prejudice.
3. TDA and the Schwab Entities' motion to compel arbitration and to stay or dismiss this case (Dkt. No. 21) is GRANTED. Mr. Hensley's claims against TDA and the Schwab Entities are DISMISSED without prejudice.

---

[8] Mr. Hensley appears to argue that he did not knowingly waive his constitutional right to a trial by jury. However, the arbitration agreement clearly disclosed that he was waiving such a right when he signed the agreement and Mr. Hensley does not present any evidence to the contrary.

[9] As noted, Mr. Hensley bears the burden to demonstrate that the arbitration agreement is invalid.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND TO COMPEL ARBITRATION (DKT. NOS. 13, 14, 21) - 14

**000015**

4. Mr. Hensley's claims against the Doe Defendants are dismissed without prejudice.[10]

DATED this 2nd day of October 2023.

David G. Estudillo
United States District Judge

---

[10] Because all named defendants have been dismissed and Mr. Hensley has failed to provide factual allegations sufficient to distinguish the actions of any of the Doe Defendants, "dismissal without prejudice is appropriate." *Comenout v. Pierce Cnty. Superior Ct.*, No. 3:16-CV-05464-RJB, 2017 WL 1957125, at *4 (W.D. Wash. May 11, 2017).

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND TO COMPEL ARBITRATION (DKT. NOS. 13, 14, 21) - 15

# EXHIBIT B



**THE FOUNDATION FOR SECURE MARKETS**

#48884

| | |
|---|---|
| **Date:** | June 21, 2021 |
| **Subject:** | Torchlight Energy Resources, Inc. – Distribution<br>Option Symbol: TRCH<br>New Symbol: TRCH1<br>Date: 06/23/21 |

<u>Background</u>

Torchlight Energy Resources, Inc. (TRCH) has announced a distribution of (New) Torchlight Energy Resources, Inc. Series A Preferred Shares ("Series A Preferred Shares"). The distribution ratio is 1 Series A Preferred Share for each TRCH share held. The record date is June 24, 2021; the payable date is June 25, 2021. The NASDAQ has set June 23, 2021 as the ex-distribution date for this distribution.

The trading status for Series A Preferred Shares is not yet known. Per the TRCH Proxy Statement dated May 5, 2021 and filed May 7, 2021, it is not expected that the Series A Preferred Shares will be listed on a national securities exchange.

<u>Possible Settlement Procedures</u>

OCC anticipates that if an OTC or OTCBB (Bulletin Board) market develops, NSCC will accept transactions in the Series A Preferred Shares which arise as a result of option exercise and assignment activity. In that event, TRCH1 option exercise and assignment activity will settle in the normal fashion through NSCC. However, if a market does not develop or NSCC does not accept transactions in the Series A Preferred Shares, OCC anticipates requiring broker to broker settlement for TRCH1 options. Pursuant to customary OCC broker to broker settlement procedures, inability to effect delivery may subsequently occasion cash settlement as determined by OCC.

<u>Contract Adjustment</u>

| | |
|---|---|
| **Effective Date:** | June 23, 2021 |
| **Option Symbol:** | TRCH changes to TRCH1 |
| **Strike Prices:** | No Change |
| **Number of Contracts:** | No Change |
| **Multiplier:** | 100 (e.g., a premium of 1.50 yields $150; a strike of 7.50 yields $750.00) |
| **New Deliverable Per Contract:** | 1) 100 Torchlight Energy Resources, Inc. (TRCH) Common Shares<br>2) 100 (New) Torchlight Energy Resources, Inc. Series A Preferred Shares (subject to delayed settlement until the trading status can be determined) |

000018

| Settlement Allocation: | TRCH: 95% |
| | Series A Preferred Shares: 5% |

| CUSIPs: | TRCH: 89102U103 |
| | Series A Preferred Shares: TBD |

THE SETTLEMENT ALLOCATION OF THE TOTAL STRIKE PRICE AMOUNT IS BEING PROVIDED SOLELY FOR THE PURPOSE OF THE INTERFACE BETWEEN OCC AND THE NATIONAL SECURITY CLEARING CORPORATION (NSCC), AND IS NOT INTENDED TO BE USED FOR ANY OTHER PURPOSE, TRANSACTION OR CUSTOMER ACCOUNT STATEMENTS.

<u>Delayed Settlement</u>

The TRCH component of the TRCH1 deliverable will settle through National Securities Clearing Corporation (NSCC). OCC will delay settlement of the Series A Preferred Share component of the TRCH1 deliverable until the trading status of Series A Preferred Shares is determined. Upon determination of the trading status of Series A Preferred Shares, OCC will require Put exercisers and Call assignees to deliver the appropriate number of shares.

<u>Disclaimer</u>

This Information Memo provides an unofficial summary of the terms of corporate events affecting listed options or futures prepared for the convenience of market participants. OCC accepts no responsibility for the accuracy or completeness of the summary, particularly for information which may be relevant to investment decisions. Option or futures investors should independently ascertain and evaluate all information concerning this corporate event(s).

The determination to adjust options and the nature of any adjustment is made by OCC pursuant to OCC By-Laws, Article VI, Sections 11 and 11A. The determination to adjust futures and the nature of any adjustment is made by OCC pursuant to OCC By-Laws, Article XII, Sections 3, 4, or 4A, as applicable. For both options and futures, each adjustment decision is made on a case by case basis. Adjustment decisions are based on information available at the time and are subject to change as additional information becomes available or if there are material changes to the terms of the corporate event(s) occasioning the adjustment.

ALL CLEARING MEMBERS ARE REQUESTED TO IMMEDIATELY ADVISE ALL BRANCH OFFICES AND CORRESPONDENTS ON THE ABOVE.

For questions regarding this memo, call Investor Services at 1-888-678-4667 or email investorservices@theocc.com.  Clearing Members may contact Member Services at 1-800-544-6091 or, within Canada, at 1-800-424-7320, or email memberservices@theocc.com.

# EXHIBIT C

Over-the-Counter-Equities                                                                                          Disclaimer

Daily List
    Additions

## Daily List Events

### Summary

| Date/Time | Event Type | Eff/Ex Date/Time | Symbol | Issue Name | Market |
|---|---|---|---|---|---|
| 12/06/2022 14:53:29 | Exchanged | 12/13/2022 00:00:00 | MMTLP | META MATLS INC PFD SER A | OTC Equity |

### Comments

MMTLP shareholders with settled positions as of 12/12/22 Record Date will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held on Pay Date of 12/14/22. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. MMTLP shares will be canceled effective 12/13/22.

### Details

| | Current Value |
|---|---|
| Daily List Date/Time | 12/06/2022 14:53:29 |
| Event Type | Exchanged |
| Effective/Ex Date/Time | 12/13/2022 00:00:00 |
| Symbol | MMTLP |
| Issue Name | META MATLS INC PFD SER A |
| Class | |
| Market Category | OTC Equity |
| Offering Type | No Restrictions |
| Daily List Comment | MMTLP shareholders with settled positions as of 12/12/22 Record Date will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held on Pay Date of 12/14/22. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. MMTLP shares will be canceled effective 12/13/22. |

Effective/Ex Date Range

Total Results: 30

**000021**

☐ OTCBB
☐ OTC Equity/Other OTC

| Daily List Date/Time | Eff/Ex Date/Time ↓ | Symbol | Issue Name | Market | Change Reason |
|---|---|---|---|---|---|
| 12/08/2022 09:44:10 | 12/16/2022 00:00:00 | ACMC | American Church Mortgage Co Common Stock | OTC Equity | Liquidation / Final Distribution |
| 12/06/2022 14:53:29 | 12/13/2022 00:00:00 | MMTLP | META MATLS INC PFD SER A | OTC Equity | Exchanged |

## Daily List Events

### Summary

| Date/Time | Event Type | Eff/Ex Date/Time | Symbol | Issue Name | Market |
|---|---|---|---|---|---|
| 12/06/2022 14:53:29 | Exchanged | 12/13/2022 00:00:00 | MMTLP | META MATLS INC PFD SER A | OTC Equity |

### Comments

MMTLP shareholders with settled positions as of 12/12/22 Record Date will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held on Pay Date of 12/14/22. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. MMTLP shares will be canceled effective 12/13/22.

### Details

| | Current Value |
|---|---|
| Daily List Date/Time | 12/06/2022 14:53:29 |
| Event Type | Exchanged |
| Effective/Ex Date/Time | 12/13/2022 00:00:00 |
| Symbol | MMTLP |
| Issue Name | META MATLS INC PFD SER A |
| Class | |
| Market Category | OTC Equity |
| Offering Type | No Restrictions |
| Daily List Comment | MMTLP shareholders with settled positions as of 12/12/22 Record Date will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held on Pay Date of 12/14/22. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. MMTLP shares will be canceled effective 12/13/22. |

Exchange Traded Fund

| 12/07/2022 00:00:00 | 12/08/2022 00:00:00 | OGKJL | OGK 2 JSC GDR 144A (Russia) | OTC Equity | ADR / GDR Program Terminated |
| 12/07/2022 11:08:38 | 12/08/2022 00:00:00 | RMBHF | R M B Holdings Ltd Ordinary Shares (South Africa) | OTC Equity | Inactive Securit |
| 12/07/2022 11:09:47 | 12/08/2022 00:00:00 | SRNXF | Sourcenext Corp Ordinary Shares | OTC Equity | Inactive Securit |

**000022**

| 12/07/2022 11:10:17 | 12/08/2022 00:00:00 | SRSSF | S2 Res Ltd Ordinary Shares (Australia) | OTC Equity | Inactive Securit |
| 12/07/2022 16:22:15 | 12/07/2022 16:22:15 | AXHIW | INDUSTRIAL HUMAN CAP INC Warrant 11/27/2026 | OTC Equity | Matured / Expired |
| 12/07/2022 16:22:09 | 12/07/2022 16:22:09 | AXHIU | INDUSTRIAL HUMAN CAP INC Unit 11/27/2026 | OTC Equity | Liquidation / Final Distribution |
| 12/07/2022 16:22:04 | 12/07/2022 16:22:04 | AXHI | Industrial Human Capital, Inc. | OTC Equity | Liquidation / Final |

## Daily List Events

### Summary

| Date/Time | Event Type | Eff/Ex Date/Time | Symbol | Issue Name | Market |
| --- | --- | --- | --- | --- | --- |
| 12/06/2022 14:53:29 | Exchanged | 12/13/2022 00:00:00 | MMTLP | META MATLS INC PFD SER A | OTC Equity |

### Comments

MMTLP shareholders with settled positions as of 12/12/22 Record Date will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held on Pay Date of 12/14/22. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. MMTLP shares will be canceled effective 12/13/22.

### Details

| | Current Value |
| --- | --- |
| Daily List Date/Time | 12/06/2022 14:53:29 |
| Event Type | Exchanged |
| Effective/Ex Date/Time | 12/13/2022 00:00:00 |
| Symbol | MMTLP |
| Issue Name | META MATLS INC PFD SER A |
| Class | |
| Market Category | OTC Equity |
| Offering Type | No Restrictions |
| Daily List Comment | MMTLP shareholders with settled positions as of 12/12/22 Record Date will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held on Pay Date of 12/14/22. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. MMTLP shares will be canceled effective 12/13/22. |

000023

# EXHIBIT D

000024

Over-the-Counter-Equities

Daily List

## Daily List Events

### Summary

| Date/Time | Event Type | Eff/Ex Date/Time | Symbol | Issue Name | Market |
|---|---|---|---|---|---|
| 12/08/2022 13:11:45 | Exchanged | 12/13/2022 00:00:00 | MMTLP | META MATLS INC PFD SER A | OTC Equity |

### Comments

See Daily List of 12/6/2022. Announcement Revised: MMTLP shareholders with settled positions as of 12/12/22 will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. Symbol: MMTLP will be deleted effective 12/13/22.

### Details

| | Current Value |
|---|---|
| Daily List Date/Time | 12/08/2022 13:11:45 |
| Event Type | Exchanged |
| Effective/Ex Date/Time | 12/13/2022 00:00:00 |
| Symbol | MMTLP |
| Issue Name | META MATLS INC PFD SER A |
| Class | |
| Market Category | OTC Equity |
| Offering Type | No Restrictions |
| Daily List Comment | See Daily List of 12/6/2022. Announcement Revised: MMTLP shareholders with settled positions as of 12/12/22 will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. Symbol: MMTLP will be deleted effective 12/13/22. |

**000025**

☐ OTCBB
☐ OTC Equity/Other OTC

| Daily List Date/Time | Eff/Ex Date/Time ↓ | Symbol | Issue Name | Market | Change Reason |
|---|---|---|---|---|---|
| 12/08/2022 09:44:10 | 12/16/2022 00:00:00 | ACMC | American Church Mortgage Co Common Stock | OTC Equity | Liquidation / Final Distribution |
| 12/06/2022 14:53:29 | 12/13/2022 00:00:00 | MMTLP | META MATLS INC PFD SER A | OTC Equity | Exchanged |

### Daily List Events

#### Summary

| Date/Time | Event Type | Eff/Ex Date/Time | Symbol | Issue Name | Market |
|---|---|---|---|---|---|
| 12/08/2022 13:11:45 | Exchanged | 12/13/2022 00:00:00 | MMTLP | META MATLS INC PFD SER A | OTC Equity |

#### Comments

See Daily List of 12/6/2022. Announcement Revised: MMTLP shareholders with settled positions as of 12/12/22 will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. Symbol: MMTLP will be deleted effective 12/13/22.

#### Details

| | Current Value |
|---|---|
| Daily List Date/Time | 12/08/2022 13:11:45 |
| Event Type | Exchanged |
| Effective/Ex Date/Time | 12/13/2022 00:00:00 |
| Symbol | MMTLP |
| Issue Name | META MATLS INC PFD SER A |
| Class | |
| Market Category | OTC Equity |
| Offering Type | No Restrictions |
| Daily List Comment | See Daily List of 12/6/2022. Announcement Revised: MMTLP shareholders with settled positions as of 12/12/22 will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. Symbol: MMTLP will be deleted effective 12/13/22. |

Exchange Traded Fund

| 12/07/2022 00:00:00 | 12/08/2022 00:00:00 | OGKJL | OGK 2 JSC GDR 144A (Russia) | OTC Equity | ADR / GDR Program Terminated |
| 12/07/2022 11:08:38 | 12/08/2022 00:00:00 | RMBHF | R M B Holdings Ltd Ordinary Shares (South Africa) | OTC Equity | Inactive Securit |
| 12/07/2022 11:09:47 | 12/08/2022 00:00:00 | SRNXF | Sourcenext Corp Ordinary Shares | OTC Equity | Inactive Securit |

**000026**



| 12/07/2022 11:10:17 | 12/08/2022 00:00:00 | SRSSF | S2 Res Ltd Ordinary Shares (Australia) | OTC Equity | Inactive Securit |
| 12/07/2022 16:22:15 | 12/07/2022 16:22:15 | AXHIW | INDUSTRIAL HUMAN CAP INC Warrant 11/27/2026 | OTC Equity | Matured / Expired |
| 12/07/2022 16:22:09 | 12/07/2022 16:22:09 | AXHIU | INDUSTRIAL HUMAN CAP INC Unit 11/27/2026 | OTC Equity | Liquidation / Final Distribution |
| 12/07/2022 16:22:04 | 12/07/2022 16:22:04 | AXHI | Industrial Human Capital, Inc. | OTC Equity | Liquidation / Final |

### Daily List Events

#### Summary

| Date/Time | Event Type | Eff/Ex Date/Time | Symbol | Issue Name | Market |
|---|---|---|---|---|---|
| 12/08/2022 13:11:45 | Exchanged | 12/13/2022 00:00:00 | MMTLP | META MATLS INC PFD SER A | OTC Equity |

#### Comments

See Daily List of 12/6/2022. Announcement Revised: MMTLP shareholders with settled positions as of 12/12/22 will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. Symbol: MMTLP will be deleted effective 12/13/22.

#### Details

| | Current Value |
|---|---|
| Daily List Date/Time | 12/08/2022 13:11:45 |
| Event Type | Exchanged |
| Effective/Ex Date/Time | 12/13/2022 00:00:00 |
| Symbol | MMTLP |
| Issue Name | META MATLS INC PFD SER A |
| Class | |
| Market Category | OTC Equity |
| Offering Type | No Restrictions |
| Daily List Comment | See Daily List of 12/6/2022. Announcement Revised: MMTLP shareholders with settled positions as of 12/12/22 will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. Symbol: MMTLP will be deleted effective 12/13/22. |

# EXHIBIT E

000028



**<u>Attn: Trading and Market Making/Legal and Compliance/Operations/Systems</u>**
**<u>UNIFORM PRACTICE ADVISORY (UPC # 35-22) 12/09/2022</u>**

**Trading and Quotation Halt for META MATERIALS PFD SER A (MMTLP)**

Effective Friday, December 09, 2022, the Financial Industry Regulatory Authority, Inc. ("FINRA") halted trading and quoting in the Series A preferred shares of Meta Materials Inc. (OTC Symbol: MMTLP). Pursuant to Rule 6440(a)(3), FINRA has determined that an extraordinary event has occurred or is ongoing that has caused or has the potential to cause significant uncertainty in the settlement and clearance process for shares in MMTLP and that, therefore, halting trading and quoting in MMTLP is necessary to protect investors and the public interest.

The trading and quoting halt will end concurrent with the deletion of the symbol effective Tuesday, December 13, 2022. *See* updated FINRA Daily List announcement of December 8, 2022, regarding MMTLP; available here: https://otce.finra.org/otce/dailyList.

*See also* Form S1 Registration Statement for Next Bridge Hydrocarbons, Inc. stating that **"...immediately after the Spin-Off, all shares of Series A Non-Voting Preferred Stock of Meta shall be cancelled**." Available here: https://www.sec.gov/Archives/edgar/data/1936756/000119312522281275/d302576ds1a.htm.

Questions regarding this notice can be directed to: FINRA Market Operations at (866) 776-0800, Option 2.

Investor protection. Market integrity.    9509 Key West Avenue    t  240 386 4000
Rockville, MD    www.finra.org
20850-3329    **000029**

# EXHIBIT F

EX-3.3(2) 2 d433696dex332.htm EX-3.3(2)

**Exhibit 3.3.2**



BARBARA K. CEGAVSKE
**Secretary of State**
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

| Filed in the Office of | Business Number E0768622007-2 |
|---|---|
| *Barbara K. Cegavske* | Filing Number 20222805988 |
| Secretary of State State Of Nevada | Filed On 12/9/2022 8:54:00 AM |
| | Number of Pages 1 |

# Certificate, Amendment or Withdrawal of Designation

### NRS 78.1955, 78.1955(6)

☐ **Certificate of Designation**

☐ **Certificate of Amendment to Designation - Before Issuance of Class or Series**

☐ **Certificate of Amendment to Designation - After Issuance of Class or Series**

☒ **Certificate of Withdrawal of Certificate of Designation**

---

TYPE OR PRINT - USE DARK INK ONLY - DO NOT HIGHLIGHT

| **1. Entity information:** | Name of entity: |
|---|---|
| | Meta Materials Inc. |
| | Entity or Nevada Business Identification Number (NVID):    E0768622007-2 |

| **2. Effective date and time:** | For Certificate of Designation or Amendment to Designation Only (Optional):    Date: 12/14/2022    Time: 2:00PM PT <br> (must not be later than 90 days after the certificate is filed) |
|---|---|

| **3. Class or series of stock:** (Certificate of Designation only) | The class or series of stock being designated within this filing: |
|---|---|

| **4. Information for amendment of class or series of stock:** | The original class or series of stock being amended within this filing: |
|---|---|

| **5. Amendment of class or series of stock:** | ☐ Certificate of Amendment to Designation- Before Issuance of Class or Series <br>      As of the date of this certificate no shares of the class or series of stock have been issued. |
|---|---|
| | ☐ Certificate of Amendment to Designation- After Issuance of Class or Series <br>      The amendment has been approved by the vote of stockholders holding shares in the corporation entitling them to exercise a majority of the voting power, or such greater proportion of the voting power as may be required by the articles of incorporation or the certificate of designation. |

| **6. Resolution:** Certificate of Designation and Amendment to Designation only) | By resolution of the board of directors pursuant to a provision in the articles of incorporation this certificate establishes OR amends the following regarding the voting powers, designations, preferences, limitations, restrictions and relative rights of the following class or series of stock.* |
|---|---|

| **7. Withdrawal:** | Designation being Withdrawn: Series A Non-Voting Preferred Stock    Date of Designation: 06/14/2021 |
|---|---|
| | No shares of the class or series of stock being withdrawn are outstanding. |
| | The resolution of the board of directors authorizing the withdrawal of the certificate of designation establishing the class or series of stock: * |
| | **NOW, THEREFORE, BE IT RESOLVED:** That the Board does hereby approve and provide for the filing of acertificate of withdrawal of the Certificate of the Series A Certificate of Designation with the Secretary of State ofthe State of Nevada, to be effective immediately following the Distribution Date [December 14, 2022]. |

| **8. Signature:** (Required) | **X** /s/ Kenneth Rice      Date: 12/09/2022 <br>      Signature of Officer |
|---|---|

* Attach additional page(s) if necessary

This form must be accompanied by appropriate fees.

Page 1 of 1
Revised: 1/1/2019

**000031**