**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| MATTHEW J. PEASE,<br><br>       Plaintiff,<br><br>   v.<br><br>SECURITIES & EXCHANGE COMMISSION, FINANCIAL INDUSTRY REGULATORY AUTHORITY, DEPOSITORY TRUST & CLEARING CORPORATION, CHARLES SCHWAB & CO., INC., formerly TD AMERITRADE, GTS SECURITIES LLC, EQUINITI TRUST COMPANY, formerly AMERICAN STOCK TRANSFER & TRUST COMPANY, NEXT BRIDGE HYDROCARBONS, INC., JOHN BRDA, GREGORY MCCABE,<br><br>       Defendants. | Case No. 7:24-CV322-RCG-DC |

**DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**DEFENDANT FINRA'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................. 2

   A.   The Second Amended Complaint. ................................................................. 2

   B.   FINRA is a Private Company That Regulates its Broker-Dealer Members, Subject to SEC Oversight. ........................................................................................... 3

   C.   FINRA Regulates the National Securities Markets. ...................................... 5

   D.   Procedural History. ...................................................................................... 6

III.   ARGUMENT ........................................................................................................ 8

   A.   Legal Standard. ............................................................................................ 8

   B.   The Court Has No Jurisdiction Over FINRA In This Action. ......................... 9

      1.   Texas's Long-Arm Statute Does Not Confer Jurisdiction Over FINRA. ................... 10

      2.   FINRA is Not Subject to General Personal Jurisdiction in Texas. ............................... 10

      3.   Pease Has Not Alleged Any Basis for Specific Jurisdiction Over FINRA. ................. 11

   C.   FINRA's Regulatory Immunity Bars All Claims. ........................................ 12

   D.   Pease Has No Private Right of Action Against FINRA. ............................... 14

      1.   No Private Right of Action Under the Exchange Act. .................................................. 15

      2.   No Private Right of Action for Common Law Claims Against FINRA. ...................... 16

   E.   Pease Fails to State an Antitrust Claim ....................................................... 17

   F.   Pease's Constitutional Claims Fail .............................................................. 19

      1.   Pease Lacks Article III Standing to Pursue Any Constitutional Claims. ..................... 19

      2.   FINRA is Not a State Actor. ........................................................................................ 20

      3.   Pease Has No Basis to Challenge FINRA's Structure or Existence. ............................ 21

IV.   CONCLUSION ................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                          **Page(s)**

*Alpine Sec. Corp. v. FINRA*,
   121 F.4th 1314 (D.C. Cir. 2024) ........................................................................24

*Asahi Metal Ind. Co., v. Sup. Court of Cal.*,
   480 U.S. 102 (1987) ........................................................................................12

*Austin Mun. Secs., Inc. v. NASD*,
   757 F.2d 676 (5th Cir. 1985) ......................................................................4, 13

*Balabon v. Ketchum*,
   785 Fed. App'x 263 (5th Cir. 2019) ...............................................................4

*Barbara v. New York Stock Exch.*,
   99 F.3d 49 (2d Cir. 1996) ..............................................................................21

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 1955 (2007) ......................................................................................8

*Bond v. United States*,
   564 U.S. 211 (2011) ........................................................................................20

*Browne v. NASD*,
   2006 U.S. Dist. LEXIS 35507 (N.D. Tex. May 31, 2006) ......................13

*Bulkley & Assocs., LLC v. Dep't of Indus. Rels.*,
   1 F.4th 346 (5th Cir. 2021) .........................................................................9, 12

*Cent. Registration Depository v. FINRA*,
   2010 WL 1154216 (C.D. Cal. Apr. 14, 2010) ...........................................16

*Citadel Sec. LLC v. Chicago Brd. Opt. Exch., Inc.*,
   2018 WL 5264195 (N.D. Ill. Oct. 23, 2018) .............................................16

*Credit Suisse Sec. (USA) LLC v. Billing*,
   551 U.S. 264 (2007) ........................................................................................18

*Currin v. Wallace*,
   306 U.S. 1 (1939) ............................................................................................23

*Cuvillier v. Taylor*,
   503 F.3d 397 (5th Cir. 2007) ..........................................................................9

*D'Alessio v. NYSE.*,
   258 F.3d 93 (2d Cir. 2001), *cert. denied*, 534 U.S. 1066 (2001) .............13

*D.L. Cromwell Invs., Inc. v. NASD Reg., Inc.*,
    279 F.3d 155 (2d Cir. 2002)............................................................................20

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).....................................................................................11

*Davis v. Next Bridge Hydrocarbons Inc.*,
    N.D. Tex. No. 3:24-cv-3058 ............................................................................3

*Desiderio v. NASD*,
    191 F.3d 198 (2d. Cir. 1999)............................................................15, 20, 21, 22

*Dobbins v. NASD*,
    2007 WL 2407081 (N.D. Ohio Aug. 22, 2007) ......................................................21

*Edmonson v. Leesville Concrete Co.*,
    500 U.S. 614 (1991)......................................................................................22

*Empire Fin. Grp., Inc. v. FINRA*,
    No. 08-80534-CIV, 2009 U.S. Dist. LEXIS 133643 (S.D. Fla. Jan. 15, 2009).........................5

*Epstein v. SEC*,
    416 F. App'x 142 (3d Cir. 2010) .......................................................................21

*Eugene v. Afd Petro. Ltd.*,
    2023 U.S. Dist. LEXIS 150992 (W.D. Tex. Aug. 26, 2023)...........................................8

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 428 (S.D.N.Y. 2013)..................................................................14

*Feins v. AMEX*,
    81 F.3d 1215 (2d Cir. 1996)............................................................................15

*First Jersey Sec., Inc. v. Bergen*,
    605 F.2d 690 (3d Cir. 1979)........................................................................21, 24

*Free Enterprise Fund v. PCAOB*,
    561 U.S. 477 (2010)......................................................................................21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)..................................................................................11, 12

*Gordon v. NYSE*,
    422 U.S. 659 (1975)......................................................................................18

*Graman v. NASD*,
    1998 WL 294022 (D.D.C. Apr. 27, 1998) ..............................................................21

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ..................................................................................................12

*Hensley v. TD Ameritrade, Inc.*,
   No. 23-cv-5159, slip op. (W.D. Wash. Oct. 2, 2023) ................................................2

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010) ...................................................................................................11

*Hofman v. Fidelity Brokerage Servs., LLC*,
   2023 WL 3872564 (C.D. Cal. May 8, 2023) .............................................................2

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013) .................................................................................................19

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .................................................................................................12

*Johnson v. Multidata Sys. Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008) .....................................................................................8

*JSW Steel (USA) Inc. v. Nucor Corp.*,
   2025 U.S. App. LEXIS 6204 (5th Cir. Mar. 17, 2025).............................................18

*Kim v. FINRA*,
   698 F. Supp. 3d 147 (D.D.C. 2023) ...................................................................21, 22

*Kurz v. Fid. Mgmt. & Rsch. Co.*,
   556 F.3d 639 (7th Cir. 2009) .....................................................................................5

*Lance v. Coffman*,
   549 U.S. 437 (2007) (per curiam) ............................................................................20

*Lebron v. National Railroad Passenger Corp.*,
   513 U.S. 374 (1995) ...................................................................................21, 22, 23

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................19

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NASD*,
   616 F.2d 1363 (5th Cir. 1980) ...................................................................................4

*MM Steel, L.P. v. JSW Steel (USA) Inc.*,
   806 F.3d 835 (5th Cir. 2015) ...................................................................................17

*MM&S Fin., Inc. v. NASD*,
   364 F.3d 908 (8th Cir. 2004) .............................................................................15, 16

*Mohlman v. FINRA,*
   2020 WL 905269 (S.D. Ohio Feb. 25, 2020), *aff'd*, 977 F.3d 556 (6th Cir.
   2020) .........................................................................................................................21

*NHBPA v. Black (NHBPA I),*
   53 F.4th 869 (5th Cir. 2022) ...........................................................................4, 24

*NHBPA v. Black (NHBPA II),*
   107 F.4th 415 (5th Cir. 2024) ..............................................................4, 22, 23

*In re NYSE Specialists Sec. Litig.,*
   503 F.3d 89 (2d Cir. 2007)..............................................................................4, 14

*Oklahoma v. U.S.,*
   62 F.4th 221 (6th Cir. 2023) ...............................................................................24

*Opulent Fund, L.P. v, Nasdaq Stock Mkt., Inc.,*
   2007 U.S. Dist. LEXIS 79260 (N.D. Cal. Oct. 12, 2007)...............................14

*Pace v. Cirrus Design Corp.,*
   No. 23-60465, 2024 U.S. App. LEXIS 13317 (5th Cir. June 3, 2024)...................11

*Park v. FINRA,*
   2023 WL 11795601 (N.D. Ga. Sept. 25, 2023) ................................................2

*Perpetual Secs., Inc. v. Tang,*
   290 F.3d 132 (2d Cir. 2002)................................................................................21

*R.H. Johnson & Co. v. SEC,*
   198 F.2d 690 (2d. Cir. 1952)..............................................................................24

*Revell v. Lidov,*
   317 F.3d 467 (5th Cir. 2002) ...............................................................................8

*Sangha v. Navig8 Shipmanagement Private Ltd.,*
   882 F.3d 96 (5th Cir. 2018) ...........................................................................9, 21

*Scottsdale Cap. Advisors v. FINRA,*
   678 F. Supp. 3d 88 (D.D.C. 2023) ....................................................................22

*In re Series 7 Broker Qual. Exam Scoring Litig.,*
   548 F.3d 110 (D.C. Cir. 2008) ...........................................................................17

*Sorrell v. SEC,*
   679 F.2d 1323 (9th Cir. 1982) ............................................................................24

*Sparta Surgical Corp. v. NASD,*
   159 F.3d 1209 (9th Cir. 1998) ............................................................................13

*Spears v. Next Bridge Hydrocarbons, Inc.*,
    W.D. Tex. No. 7:24-cv-321-DC-RCG ..................................................................3

*Spicer v. Chicago Bd. of Options Exch., Inc.*,
    977 F.2d 255 (7th Cir. 1992) ...........................................................................15

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).........................................................................................19

*Stuart v. Spademan*,
    772 F.2d 1185 (5th Cir. 1985) ...........................................................................8

*Sunshine Anthracite Coal Co. v. Adkins*,
    310 U.S. 381 (1940)..........................................................................................23

*Sybalski v. Indep. Grp. Home Living Program, Inc.*,
    546 F.3d 255 (2d Cir. 2008)..............................................................................20

*Tawil v. FINRA*,
    2023 WL 4353179 (N.D. Fla. May 24, 2023) ...............................................2, 14

*In re Toyota Hybrid Brake Litig.*,
    Case No. 4:20-CV-127, 2021 U.S. Dist. LEXIS 124918 (E.D. Tex. July 6,
    2021) ...............................................................................................................10

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)......................................................................................19

*Turbeville v. FINRA*,
    874 F.3d 1268 (11th Cir. 2017) ...........................................................................4

*U.S. v. NASD, Inc.*,
    422 U.S. 694 (1975)..........................................................................................18

*United States v. Microsoft*,
    253 F.3d 34 (D.C. Cir. 2001).............................................................................18

*United States v. Rock Royal Co-op.*,
    307 U.S. 533 (1939)..........................................................................................23

*Webb v. FINRA*,
    889 F.3d 853 (7th Cir. 2018) ........................................................................4, 11

*Weissman v. NASD, Inc.*,
    500 F.3d 1293 (11th Cir. 2007) .........................................................................13

*Wiley v. SEC*,
    663 Fed. App'x 353 (5th Cir. 2016) .....................................................................3

vi

**Statutes, Rules & Regulations**

17 C.F.R. § 240.10b-17 .................................................................................................6

72 Fed. Reg. at 42,170-72 ............................................................................................4

15 U.S.C. § 15 ...........................................................................................................17

15 U.S.C. § 78o ......................................................................................................4, 5

15 U.S.C. § 78s ...........................................................................................................5

15 U.S.C. § 78u ...........................................................................................................5

Clayton Act ................................................................................................................17

Exchange Act ....................................................................................................... *passim*

Fed. R. Civ. P. 12 ..................................................................................................1, 8, 9

FINRA Rule 6400 Series .........................................................................................6, 7

Tex. Civ. Prac. & Rem. Code § 17.042 ................................................................9, 10

Tx. Civ. Prac. & Rem. Code § 17.041(2) ................................................................10

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"), by and through its undersigned counsel, respectfully moves this Court for an order dismissing each cause of action that Plaintiff Matthew J. Pease ("Pease") asserts against FINRA in his Second Amended Complaint ("SAC") [ECF No. 12].

## I.    **<u>INTRODUCTION</u>**

FINRA is a private, not-for-profit self-regulatory organization ("SRO") that is authorized by Congress to conduct the daily regulation of the national securities markets, with oversight from the Securities and Exchange Commission ("SEC"). The national securities markets are comprised of the national securities exchanges (*e.g.*, NASDAQ, New York Stock Exchange, Cboe) and the over-the-counter ("OTC") market. Equity securities not listed on a national securities exchange may be traded and quoted in the OTC market.

This case relates to an OTC equity security—formerly traded on the OTC market and identified with the symbol MMTLP. On December 9, 2022, based on its authority to regulate its members who quote and trade equity securities on the OTC market, FINRA directed its member firms to halt trading and quoting of MMTLP shares. The SAC in this case is one in a series of *pro se* lawsuits filed by individual investors who previously held MMTLP shares and who are seeking to lay blame for their purported losses at the feet of regulators like FINRA and the SEC, among other defendants.[1]

---

[1] There are currently two other cases pending before this Court relating to this same MMTLP security. *See Willcot v. SEC et al.*, 7:24-CV-00317-RCG-DC (W.D. Tex. Dec. 6, 2024); *Spears v. SEC et al.*, 7:24-CV-00321-RCG-DC (W.D. Tex. Dec. 6, 2024).

Like other prior, unsuccessful MMTLP investor lawsuits,[2] Pease's claims against FINRA are fatally flawed for multiple reasons. First, this Court lacks personal jurisdiction over FINRA. In addition, all of Pease's claims against FINRA are barred by absolute immunity because they relate to FINRA's regulatory activities. Further, neither the Exchange Act nor any other statute or common law principle provides Pease with a private right of action against an SRO for acts or omissions in connection with its regulatory duties. Finally, the prolix SAC (which includes 328 separate paragraphs, not including subparts, over 93 pages) fails to state any claim against FINRA.

For the reasons outlined in this Motion, the SAC must be dismissed with prejudice as to FINRA, and without leave to amend because any amendment to the SAC would be futile.

## II.    FACTUAL BACKGROUND

### A.    The Second Amended Complaint.

The SAC is one in a series of investor complaints, filed by *pro se* litigants, seeking relief for claims against FINRA that arise exclusively from its regulatory activities related to MMTLP – an equity security that traded on the OTC market. Several such cases have been dismissed by other federal district courts pursuant to orders that have become final. *See supra* fn. 2.

While it is less than clear, the SAC appears to assert approximately ten causes of action against FINRA, all of which are based on speculative and unsupported conclusions about FINRA's

---

[2] *See, e.g.*, *Hensley v. TD Ameritrade, Inc.*, No. 23-cv-5159, slip op. (W.D. Wash. Oct. 2, 2023) (a true and correct copy of this decision is attached as Exhibit A to FINRA's Accompanying Request for Judicial Notice ("FINRA RJN")); *Park v. FINRA*, 2023 WL 11795601, at *3-5 (N.D. Ga. Sept. 25, 2023); *Hofman v. Fidelity Brokerage Servs., LLC*, 2023 WL 3872564, at *6-8 (C.D. Cal. May 8, 2023); *Tawil v. FINRA*, 2023 WL 4353179, at *1-2 (N.D. Fla. May 24, 2023); *see also Traudt v. Rubenstein,* 2:24-CV-00782, (D. Vt., Nov. 19, 2024) (after FINRA's motion to dismiss was granted, plaintiff filed a motion to amend, which is currently pending before the court (ECF No. 112)).

regulatory activities related to MMTLP.[3] There is a prolific social media community of former MMTLP investors who discuss conspiracy theories and misinformation related to MMTLP. Indeed, the SAC is largely duplicative of other cases related to MMTLP that were filed on or after December 9, 2024,[4] and the social media community refers to the plaintiffs that filed these complaints as the "1209 Group." The SAC (and the other complaints filed by the 1209 Group) include hundreds of paragraphs repeating the same or significantly similar allegations, all of which appear to be fueled by the social media discussions among former MMTLP investors.

### B.    FINRA is a Private Company That Regulates its Broker-Dealer Members, Subject to SEC Oversight.[5]

In the Securities Exchange Act of 1934 ("Exchange Act"), Congress established "a comprehensive system of federal regulation of the securities industry," an integral part of which is the formation and oversight of private SROs, like FINRA, which are "responsible for the self-regulation of member brokerage firms, exchange markets, and individuals associated with those firms and markets." *Wiley v. SEC,* 663 Fed. App'x 353, 356 n.1 (5th Cir. 2016). Under that system,

---

[3] Specifically, Count 1 (Exchange Act Violations) SAC ¶¶ 224-229; Count 2 (Regulatory Negligence) SAC ¶¶ 230-233; Count 6 (General Negligence) SAC ¶¶ 247-250; Count 7 (Breach of Contract) SAC ¶¶ 251-254; Count 10 (Failure to Supervise) SAC ¶¶ 262-264; Count 11 (Negligent and Intentional Infliction of Emotional Distress) SAC ¶¶ 265-268; Count 12 (Conspiracy to Commit Fraud) SAC ¶¶ 269-272; Count 15 (Violation of Regulation SHO) SAC ¶¶ 280-282; Count 16 (Antitrust Violations) SAC ¶¶ 283-286; Count 17 (Constitutional Claims – Nondelegation and Separation of Powers) SAC ¶¶ 287-289).

[4] *See, e.g., Albert v. SEC*, D. Md. No. 1:24-cv-3548-JRR (dismissed voluntarily by plaintiff); *Auxier v. SEC*, W.D. Tex. No. 7:24-cv-318-DC-RCG; *Davis v. Next Bridge Hydrocarbons Inc.,* N.D. Tex. No. 3:24-cv-3058; *Spears v. Next Bridge Hydrocarbons, Inc.,* W.D. Tex. No. 7:24-cv-321-DC-RCG; *Vetrano v. Brda,* W.D. Tex. No. 7:24-cv-325-DC-RCG; *Willcot v. SEC,* W.D. Tex. No. 7:24-cv-317-DC-RCG; *Rolo v. SEC,* D. Conn. No. 3:24-cv-02053-JAM.

[5] In addition to the allegations in the SAC that describe FINRA, the information discussed in this Motion regarding FINRA's role in the securities industry is publicly available, or in case law, or other sources for which the Court may take judicial notice.

the SEC has "formidable oversight power to supervise, investigate, and discipline [FINRA] for any possible wrongdoing or regulatory missteps." *NHBPA v. Black (NHBPA II)*, 107 F.4th 415, 435 (5th Cir. 2024) (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 101 (2d Cir. 2007) (quotation marks omitted)).

FINRA is a private, not-for-profit Delaware corporation and SRO headquartered in the District of Columbia. *See* SAC ¶ 30 (FINRA is headquartered in Washington, D.C.); *see also Webb v. FINRA*, 889 F.3d 853, 856 (7th Cir. 2018). The government does not appoint FINRA board members, officers, or employees. 72 Fed. Reg. at 42,170-72; *see also* SAC ¶ 116. FINRA does not receive any state or federal funding; it is funded by registration, membership, and transaction fees charged to its members. *See* FINRA By-Laws, Art. VI, § 1, *publicly available at* https://www.finra.org/rules-guidance/rulebooks/corporate-organization/power-corporation-fix-and-levy-assessments.

The Exchange Act generally requires any broker or dealer transacting in securities to join an association of broker-dealers registered as a national securities association, which is one type of SRO. *See* 15 U.S.C. § 78o(a)(1), (b)(1); *see also Balabon v. Ketchum,* 785 Fed. App'x 263, 263 (5th Cir. 2019). FINRA is a registered national securities association under the Exchange Act. *See Balabon*, 785 Fed. App'x at 263; *see also Turbeville v. FINRA*, 874 F.3d 1268, 1270, n.2 (11th Cir. 2017); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NASD*, 616 F.2d 1363, 1365 (5th Cir. 1980). In that capacity, FINRA exercises its regulatory authority over the broker-dealer industry in accordance with the requirements of the Exchange Act and under close supervision by the SEC. *NHBPA v. Black (NHBPA I),* 53 F.4th 869, 876-77 (5th Cir. 2022).

The SEC has "broad supervisory responsibilities over [SROs]" and correspondingly broad power to enforce their compliance with these obligations. *See Austin Mun.*, 757 F.2d 676, 680 (5th Cir. 1985). If FINRA violates the Exchange Act, federal regulations, or its own rules, the SEC

may suspend or revoke FINRA's registration as an SRO, limit FINRA's activities, functions, and operations, or impose other sanctions. *See* 15 U.S.C. § 78s(c), (h)(1)-(4). The SEC is also authorized to initiate judicial proceedings against FINRA to enjoin activities that would violate the Exchange Act or FINRA's rules and to seek civil penalties. *See* 15 U.S.C. § 78u(d)(1), (d)(3)(A). Thus, "Congress has vested in the SEC the obligation of ensuring that FINRA performs its statutory responsibilities." *Empire Fin. Grp., Inc. v. FINRA,* No. 08-80534-CIV, 2009 U.S. Dist. LEXIS 133643, *20 (S.D. Fla. Jan. 15, 2009).

The Exchange Act requires FINRA to establish rules "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in securities, . . . and, in general, to protect investors and the public interest . . . ." 15 U.S.C. § 78o-3(b)(6). FINRA's rules are "part of the apparatus of federal securities regulation." *Kurz v. Fid. Mgmt. & Rsch. Co.*, 556 F.3d 639, 641 (7th Cir. 2009).

### C.    FINRA Regulates the National Securities Markets.

The national securities markets are comprised of the national securities exchanges and the OTC market. FINRA does not operate a market, and it does not issue, cancel, settle, or clear securities that are traded in the national securities markets. Instead, FINRA performs oversight functions and regulates its members that trade and quote securities in the national securities markets to ensure compliance with FINRA rules, the federal securities laws, and the rules and regulations thereunder. 15 U.S.C. § 78o-3(b).

Specifically, FINRA performs multiple regulatory functions to oversee the OTC market for equity securities, like MMTLP, that are not listed on a national securities exchange. For example,

FINRA: (1) maintains a symbol directory for OTC equity securities and, where appropriate, can issue and delete security symbols, *see* https://otce.finra.org/otce/symbol-directory; (2) adopts rules regarding quoting and trading in OTC equity securities, *see* FINRA Rule 6400 Series; (3) reviews, processes, and announces information about corporate actions regarding OTC equity securities, *see* SEC Rule 10b-17, 17 C.F.R. § 240.10b-17; *see also* FINRA Rule 6490;[6] and (4) is authorized to halt trading and quoting of OTC equity securities if FINRA determines that doing so is necessary to protect investors and the public interest, *see* FINRA Rule 6440.[7]

### D.    Procedural History.

In 2021, Torchlight Energy Resources, Inc. ("Torchlight") completed a reverse merger to create Meta Materials, Inc. ("Meta"). SAC ¶ 43. As part of that merger, Torchlight shareholders received Non-Voting Series A Preferred Shares ("Series A Shares"). SAC ¶¶ 34, 43. In June 2021, the OCC issued a memorandum explaining that the trading status of the Series A Shares was "not yet known," and based on the Proxy Statement filed by the company, those shares were not expected to be listed on a national securities exchange. *See* FINRA RJN, Exhibit B (OCC Memo); *see also* SAC ¶¶ 45, 69, 71, 221 (asserting that the proxy filings "legally forbade public trading" of the Series A Shares). That memorandum also explained how transactions in the Series A Shares would be expected to clear if an OTC market developed and if such a market did not develop. *See* FINRA RJN, Exhibit B, at 1.

In October 2021, a market developed, and the Series A Shares began trading on the OTC market under the symbol MMTLP. SAC ¶¶ 36, 45, 69, 71, 221. In 2022, Meta initiated a corporate

---

[6] FINRA Rule 6490 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6490.

[7] FINRA Rule 6440 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6440-0.

action pursuant to which the Series A Shares, which represented shareholders' interests in Torchlight's oil and gas assets, were spun off into Next Bridge Hydrocarbons ("Next Bridge"). SAC ¶ 47. Pursuant to FINRA Rule 6490, on December 6, 2022, as modified on December 8, 2022, FINRA announced Meta's plan to distribute shares of Next Bridge's common stock to holders of its Series A Shares on a one-for-one basis (the "Announcement"). SAC ¶ 86.b. The Announcement explained that "MMTLP shareholders with settled positions as of [December 12, 2022,] will receive one (1) share of [Next Bridge] for every one (1) share of MMTLP held." *See* FINRA RJN, Exhibit C (12/6/2022 Corporate Action Notice); FINRA RJN, Exhibit D (12/8/2022 Corporate Action Notice);[8] *see also* SAC ¶ 47. Among other things, the Announcement further explained that any "[p]urchases of MMTLP executed after [December 8, 2022,] will not receive the distribution. . . . Symbol: MMTLP will be deleted effective [December 13, 2022]." *See id*.[9]

On December 9, 2022, pursuant to FINRA Rule 6440, FINRA notified its members to halt trading and quoting of MMTLP on the OTC market because "an extraordinary event has occurred or is ongoing that has caused or has the potential to cause significant uncertainty in the settlement and clearance process for shares in MMTLP." *See* FINRA RJN, Exhibit E (Notice of Trading Halt);

---

[8] Pease references the Corporate Action Notices in the SAC. SAC ¶ 86.b ("On December 8, 2022, FINRA unilaterally *revised* the corporation action notice for MMTLP.") (emphasis added). Thus, as noted in FINRA's RJN filed concurrently herewith, the Court may properly consider them when deciding this Motion to Dismiss. *See* FINRA RJN.

[9] The Announcement was modified on December 8, 2022, in part, to clarify that FINRA would *delete* the MMTLP trading symbol on December 13, 2022. FINRA RJN, Exhibit D. While the original version of the Announcement, published on December 6, 2022, stated that MMTLP *shares will be cancelled* effective December 13, 2022, *see* FINRA RJN, Exhibit C, FINRA does not *and cannot* cancel a company's securities. FINRA may, however, delete a trading symbol for a security when it learns that the security has been cancelled. Thus, the Announcement was modified to reflect that FINRA would delete the MMTLP symbol because the Series A Shares would be cancelled as part of Meta's corporate action. FINRA RJN, Exhibit D.

*see also* SAC ¶¶ 17, 86.a, 107, 161.[10] As announced, the trading halt ended on December 13, 2022.

RJN, Exhibit E. The Meta distribution was finalized on December 14, 2022, *see* Next Bridge Press

Release (Dec. 20, 2022),[11] and Meta cancelled the MMTLP Shares on or about that same date. *See*

RJN, Exhibit F (Amendment); *see also* Next Bridge Investor FAQs.[12]

## III.   ARGUMENT

### A.   Legal Standard.

A plaintiff bears the burden to establish jurisdiction over a defendant moving to dismiss

pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. *See Johnson v. Multidata Sys.*

*Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). In deciding whether the Court has personal

jurisdiction over the defendant, a court may consider affidavits and documents submitted by the

parties. *Revell v. Lidov,* 317 F.3d 467, 469 (5th Cir. 2002) (citing *Stuart v. Spademan,* 772 F.2d

1185, 1192 (5th Cir. 1985)).

When considering a Rule 12(b)(6) motion to dismiss, the court accepts all well-pleaded

facts as true and views them in the light most favorable to the plaintiff. *See Eugene v. Afd Petro.*

*Ltd.,* 2023 U.S. Dist. LEXIS 150992, *4 (W.D. Tex. Aug. 26, 2023). To survive a motion to dismiss,

a complaint must contain enough facts for the allegations to be plausible on their face. *See Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 1955, 1974 (2007); *Eugene*, 2023 U.S. Dist. LEXIS at *4 ("[a

complaint] must provide the plaintiff's grounds for entitlement to relief – including factual

---

[10] Pease references FINRA's trading halt announcement in the SAC. SAC ¶ 17; *see also* FINRA RJN, Exhibit E.

[11] A*vailable at* *https://uploads-ssl.webflow.com/6169e69d0075ec7c66221a8b/63a376a38add926dd316f36a_NBH%20News%20Release%2012-20-2022%20.pdf* ("Next Bridge Press Release") (last visited Apr. 13, 2025).

[12] A*vailable at* *https://web.archive.org/web/20230106094030/https://www.nextbridgehydrocarbons.com/investors* ("Next Bridge FAQs") (last visited Mar. 7, 2025).

allegations that when assumed to be true raise a right to relief above the speculative level.") (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)) (cleaned up).

**B.      The Court Has No Jurisdiction Over FINRA In This Action.**

A court must have jurisdiction over both the parties and the claims asserted in a plaintiff's complaint to decide the case. Because FINRA is not subject to personal jurisdiction in this Court, the SAC should be dismissed under Rule 12(b)(2).

In Texas, courts evaluate personal jurisdiction over nonresident defendants through a two-step inquiry, ensuring compliance with the state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *See Bulkley & Assocs., LLC v. Dep't of Indus. Rels.*, 1 F.4th 346, 351 (5th Cir. 2021). Texas's long-arm statute specifically provides for personal jurisdiction over nonresidents who "do[] business" in Texas or "commit[] a tort" in Texas. Tex. Civ. Prac. & Rem. Code § 17.042. However, "the Texas long-arm statute extends to the limits of federal due process." *Bulkley*, 1 F.4th at 351 (citations omitted). Therefore, "the two-step inquiry" of assessing the long-arm statute and due process "collapses into one federal due process analysis." *Id.*; *see also Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

As a threshold matter, Pease does not allege that the Court has personal jurisdiction over FINRA as to any claim in the SAC. *See* SAC ¶ 9. Instead, Pease alleges that FINRA operates across the U.S. and is not tied to any specific jurisdiction. *Id.* Moreover, the facts as alleged do not support the exercise of personal jurisdiction over FINRA pursuant to Texas's long-arm statute, and the Due Process Clause of the Fourteenth Amendment requires dismissal because the Court lacks both general and specific personal jurisdiction over FINRA. Thus, the SAC should be dismissed.

1.    <u>Texas's Long-Arm Statute Does Not Confer Jurisdiction Over FINRA.</u>

Texas's long-arm statute provides for personal jurisdiction over nonresidents[13] conducting business in Texas if the nonresidents: (1) contract by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; (2) contract by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; or (3) recruit Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state. Tex. Civ. Prac. & Rem. Code § 17.042.

"Because 'Texas gives its courts of general jurisdiction all of the power allowed by the Due Process Clause,' Texas courts need only determine 'whether the exercise of jurisdiction comports with the limits imposed by federal due process on the State of Texas.'" *In re Toyota Hybrid Brake Litig.*, Case No. 4:20-CV-127, 2021 U.S. Dist. LEXIS 124918, at *7 (E.D. Tex. July 6, 2021) (citations omitted).

None of FINRA's alleged conduct in the SAC falls into any of the categories enumerated under the long-arm statute. Pease's claims undeniably arise out of FINRA's performance of its regulatory functions generally, and the SAC does not allege any of those activities occurred in Texas. Thus, Texas's long-arm statute does not confer personal jurisdiction over FINRA as to any claim in the SAC. Even if Texas's long-arm statute did confer personal jurisdiction over FINRA, however, the Court still cannot exercise personal jurisdiction over FINRA in this action because to do so would violate the Due Process Clause of the Fourteenth Amendment.

2.    <u>FINRA is Not Subject to General Personal Jurisdiction in Texas.</u>

Corporations are subject to general personal jurisdiction solely where "their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

---

[13] A "nonresident" includes a foreign corporation. *See* Tx. Civ. Prac. & Rem. Code § 17.041(2).

"[O]nly a limited set of affiliations with a forum" are sufficient to establish that the corporation is "essentially at home." *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A corporation is considered "essentially at home" in two places: (1) its state of incorporation, and (2) the state in which its principal place of business is located.[14] *See Daimler AG*, 571 U.S. at 137.

FINRA is a foreign corporation that is not subject to general personal jurisdiction in Texas. FINRA is not incorporated in Texas, and it does not maintain its principal place of business in Texas. Instead, FINRA is incorporated in Delaware and its principal place of business is in Washington D.C. *See Webb v. FINRA*, 889 F.3d 853, 856 (7th Cir. 2018) (noting that "FINRA is a Delaware corporation with its principal place of business in Washington, D.C.").[15] Accordingly, because FINRA is not "essentially at home" in Texas, the Court lacks general personal jurisdiction over FINRA.

### 3.    Pease Has Not Alleged Any Basis for Specific Jurisdiction Over FINRA.

FINRA is also not subject to specific personal jurisdiction because there is no connection (nor has Pease alleged one) between FINRA's alleged conduct and Texas. A forum may exercise personal jurisdiction over a foreign corporation not otherwise subject to personal jurisdiction in the forum when the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear*, 564 U.S. at 923 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In

---

[14] A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Typically, a corporation's headquarters qualifies as its principal place of business, and, as a result, the corporation is subject to general personal jurisdiction in the courts of that state. *See Pace v. Cirrus Design Corp.*, No. 23-60465, 2024 U.S. App. LEXIS 13317, at *9 (5th Cir. June 3, 2024) ("A corporation is at home where its place of incorporation and its principal place of business are located.") (citation omitted).

[15] Pease acknowledges that FINRA is headquartered in Washington, D.C. *See* SAC ¶ 30.

other words, there must be "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Goodyear*, 564 U.S. at 924 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). It is not enough that an act was allegedly directed at the plaintiff. Instead, to be consistent with due process, the defendant's actions must be "purposefully directed toward the forum State." *Asahi Metal Ind. Co., v. Sup. Court of Cal.*, 480 U.S. 102, 112 (1987).

Here, Pease fails to allege any facts establishing that his claims "arise[] out of or results from [FINRA's] forum-related contacts." *See Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of Cal.*, 1 F.4th 346, 351 (5th Cir. 2021) (citations omitted). Indeed, Pease does not allege that FINRA had any contact with Texas. *See generally* SAC. Rather, Pease challenges the propriety of FINRA's regulatory decisions related to MMTLP and FINRA's power for making such determinations, claiming that such failures harmed him and other retail investors generally. *See e.g.*, SAC ¶¶ 15, 17, 63-65, 67, 69, 86, 89, 149, 157, 165, 186; *see also,* SAC ¶¶ 18-20, 30, 46, 61(b), 65, 73(b), 77, 78 79, 86(c), 87, 95, 103, 105, 108, 146, 148, 159, 170. Pease further challenges the constitutional validity of FINRA's authority (*see, e.g.*, SAC ¶¶ 20, 115-127, 164, 176-181) and alleges violations of the private nondelegation doctrine (*see, e.g.*, SAC ¶¶ at 20, 128-141,164, 182-196).

None of these allegations establishes specific personal jurisdiction over FINRA in this forum. As such, the SAC should be dismissed.

## C.    FINRA's Regulatory Immunity Bars All Claims.

Even if the Court does have jurisdiction over FINRA for Pease's claims, an SRO such as FINRA is absolutely "immune from liability based on the discharge of its duties under the Exchange Act." *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213 (9th Cir. 1998); *see also*

*Browne v. NASD*, 2006 U.S. Dist. LEXIS 35507, *13 (N.D. Tex. May 31, 2006) ("The Fifth Circuit has explicitly held that NASD and its disciplinary officers have absolute immunity from further prosecution for personal liability on claims arising within the scope of their official duties.").

Every circuit court that has considered the issue has held that SROs are absolutely immune "from suit for conduct falling within the scope of [their] regulatory and general oversight functions." *See, e.g.*, *D'Alessio v. NYSE.*, 258 F.3d 93, 105 (2d Cir. 2001), *cert. denied*, 534 U.S. 1066 (2001); *see also Austin Mun. Secs., Inc. v. NASD*, 757 F.2d 676, 679 (5th Cir. 1985) (holding that NASD has absolute immunity from claims arising within the scope of its duties). Such protection is crucial to an SRO's ability to perform its regulatory tasks within the federal framework and is consistent with the system of cooperative regulation enacted by Congress "under which [SROs] . . . exercise a primary supervisory role subject to ultimate SEC control." *Sparta Surgical*, 159 F.3d at 1213-14.

When determining an SRO's entitlement to absolute immunity, courts examine the nature of the function performed and not "an SRO's subjective intent or motivation." *Weissman v. NASD, Inc.*, 500 F.3d 1293, 1297 (11th Cir. 2007); *see also Austin Mun.*, 757 F.2d at 688 (examining whether challenged action falls within scope of permissible discretion).

Here, while vaguely alleged and wholly unsupported, all of Pease's factual allegations against FINRA arise exclusively from its regulatory activities—specifically, the issuance of a trading halt and its alleged failure to oversee its members.[16] *See, generally* SAC. Indeed, Pease acknowledges that FINRA has the regulatory powers to oversee market activities, SAC ¶ 30, which

---

[16] *See, e.g.*, SAC ¶¶ 12 ("This case arises from . . . regulatory negligence."); ¶ 21 (alleging that "regulatory failures enabled institutional participations to manipulation the market . . . ."); ¶ 28 (alleging harm based on "regulatory negligence."); ¶ 46 (alleging that FINRA neglected its "regulatory obligations.").  Indeed, Pease explicitly refers to "regulatory negligence," "regulatory failures," or failures in "regulatory oversight" more than 30 times in the SAC.

includes the authority to impose trading halts. In addition, Pease relies on vague and conclusory allegations that FINRA abdicated its regulatory responsibilities by failing to, among other things, take certain action(s) to address alleged market failures and manipulation. *See, e.g.,* SAC ¶¶ 65, 79, 86-87, 93, 103, 105.

FINRA's decision to halt trading of MMTLP is a "quintessentially regulatory function." *See, e.g., In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 454 (S.D.N.Y. 2013); *Tawil v. FINRA*, 2023 WL 4353179, at *1 (N.D. Fla. May 24, 2023) ("Suspending trading – when warranted – is precisely the kind of activity FINRA can undertake in its quasi-regulatory capacity."); *Opulent Fund, L.P. v, Nasdaq Stock Mkt., Inc.*, 2007 U.S. Dist. LEXIS 79260, *13 (N.D. Cal. Oct. 12, 2007) (identifying suspension of trading as regulatory in nature). Moreover, to the extent Pease alleges FINRA violated its own rules, SAC ¶¶ 9, 30, 65, 79, 86-87, FINRA remains entitled to absolute immunity because the "enforcement (or nonenforcement) of these rules clearly implicates the quasi-governmental functions." *In re NYSE Specialists Secs. Litig.*, 503 F.3d at 99.

Put simply, Pease is dissatisfied with *how* FINRA performed its regulatory functions. No matter how Pease packages his claims, they all challenge FINRA's regulatory activities and thus are barred by absolute immunity. Accordingly, the claims against FINRA in the SAC should be dismissed with prejudice.

### D.    Pease Has No Private Right of Action Against FINRA.

Neither the Exchange Act nor any other statute or common law principle provides for a private right of action against an SRO, like FINRA, for acts or omissions in connection with its duties as a regulator. Thus, in addition to being barred by regulatory immunity, Pease's claims against FINRA fail for the independent reason that Pease has no private right of action against FINRA arising under the Exchange Act, other federal laws, state law, or otherwise.

1.    <u>No Private Right of Action Under the Exchange Act.</u>

Courts have consistently held that no private right of action exists against an SRO, like FINRA, for its regulatory acts, omissions, or alleged violations of its own rules. *See, e.g., MM&S Fin., Inc. v. NASD*, 364 F.3d 908, 911-12 (8th Cir. 2004) ("the Exchange Act does not create a private right of action against NASD defendants for violating their own rules" and a party's attempt to bypass the absence of a private right of action by asserting a claim under state contract law is "fruitless."); *Desiderio v. NASD*, 191 F.3d 198, 208 (2d. Cir. 1999) ("[T]here is no private right of action available under the Securities Exchange Act . . . to challenge an exchange's failure to follow its own rules."); *Feins v. AMEX*, 81 F.3d 1215, 1223-34 fn. 6 (2d Cir. 1996) (finding no private right of action exists against an SRO under Section 19 of the Exchange Act); *Spicer v. Chicago Bd. of Options Exch., Inc.*, 977 F.2d 255, 259-60 (7th Cir. 1992) (holding no private right of action exists under the Exchange Act against an SRO for failing to enforce its rules).

Here, the SAC purports to assert causes of action against FINRA arising out of FINRA's alleged acts or omissions under the Exchange Act. *See generally* SAC.[17] Specifically, Pease's claims directly challenge the propriety of FINRA's regulatory decision-making under specific provisions of the Exchange Act. *See, e.g.,* SAC ¶¶ 56, 62, 67b, 68, 104 (alleging grievances with the "decision-making" of regulators related to MMTLP); *see also* SAC ¶¶ 12, 15, 17, 21, 28, 30, 46, 63c, 67c, 70, 77-70, 81, 94, 103, 107-113. Thus, at a minimum, Counts 1, 2, 6, 7, 10, 11, 12, and 15 against FINRA should be dismissed with prejudice because Pease has no private right of action to assert them, and any proposed amendment would be futile.

---

[17] Specifically, each of the following causes of action against FINRA arise out of the Exchange Act: Count 1 (Violation of Exchange Act); Count 2 (Negligence by Regulator); Count 6 (General Negligence); Count 7 (Breach of Contract); Count 10 (Failure to Supervise); Count 11 (Negligent and Intentional Infliction of Emotional Distress); and Count 12 (Conspiracy to Commit Fraud).

2.      No Private Right of Action for Common Law Claims Against FINRA.

Likewise, a plaintiff is foreclosed from asserting common law claims against an SRO based on alleged breaches of duties arising under federal securities laws. *See, e.g., Cent. Registration Depository v. FINRA*, 2010 WL 1154216, at *2 (C.D. Cal. Apr. 14, 2010) (dismissing plaintiff's claims against FINRA for common law fraud, negligence, and defamation because the claims arose out of FINRA's registration requirements and its maintenance of plaintiff's registration information in the Central Registration Depository, which "performed pursuant to both statutory and regulatory mandates."); *Citadel Sec. LLC v. Chicago Brd. Opt. Exch., Inc.*, 2018 WL 5264195, at *4 (N.D. Ill. Oct. 23, 2018) (dismissing breach of contract and other state law claims against SRO because "common law claims against an SRO for violating its own rules are either preempted or barred by immunity, or both."); *MM&S Fin. Inc. v. NASD*, 364 F.3d 908, 912 (8th Cir. 2004) (dismissing breach of contract claim against SRO because allowing such a claim "would vitiate Congress's intent not to allow private rights of action against self-regulatory organizations for violating [an SRO's] own rules.").

Here, Pease asserts five common law causes of action against FINRA, all of which are based on FINRA's alleged failures as a regulator.[18] Each of these causes of action—like the rest of Pease's claims against FINRA—purport to challenge the propriety of the trading halt, which is

---

[18] Specifically, in Count 2, Pease alleges FINRA negligently breached its "duty of care to investors under the [Exchange Act]." SAC ¶ 230. In Count 6, Pease alleges "General Negligence by FINRA" claiming that "FINRA . . . owed a duty of care to investors under federal securities laws . . . to act reasonably in carrying out their regulatory and oversight responsibilities." SAC ¶ 247. In Count 7, notwithstanding Pease's failure to identify any contract with FINRA, Pease claimed "Breach of Contract by FINRA" based on allegations that "FINRA[] fail[ed] to enforce its contractual obligations under [the Exchange Act]." SAC ¶ 253. In Count 11, Pease alleges "Negligent and Intentional Inflection of Emotional Distress" based on "[t]he imposition of the U3 trading halt" and unidentified "misrepresentations and omissions" by defendants generally. SAC ¶¶ 265-66. Finally, in Count 12, Pease asserts all defendants conspired to commit fraud based on the bald conclusion that defendants "coordinated to harm retail investors." SAC ¶¶ 269-271.

quintessential regulatory activity. Pease, however, cannot assert common law claims against FINRA for alleged violations of the Exchange Act, FINRA Rules, or perceived failures in FINRA's regulatory decision making. *See In re Series 7 Broker Qual. Exam Scoring Litig.*, 548 F.3d 110, 113 (D.C. Cir. 2008) ("Whether analyzed under preemption doctrine or a theory of regulatory immunity, the result is the same: plaintiffs cannot raise a common law complaint against defendants based on duties arising under the Exchange Act."). Thus, Counts 2, 6, 7, 10 and 12 against FINRA should be dismissed with prejudice.

### E.      Pease Fails to State an Antitrust Claim

Section 4 of the Clayton Act establishes a private right of action under the antitrust laws if the plaintiff has been "injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. Thus, as an initial matter, a plaintiff must allege an antitrust violation that can be remedied pursuant to Section 4 of the Clayton Act. No such allegation exists in the SAC.

Here, Plaintiff attempts to assert an antitrust violation under the Sherman Act. To state a claim under the Sherman Act, "a plaintiff must show that the defendants '(1) engaged in a conspiracy (2) that restrained trade (3) in a particular market.'" *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015). While the SAC asserts that the "Defendants, including FINRA and certain market participants, engaged in anti-competitive practices that distorted the market for MMTLP shares," SAC ¶ 284, it fails to allege any agreement among the defendants. To establish a conspiracy, plaintiffs must establish that the challenged conduct stems from an agreement, tacit or express. *JSW Steel (USA) Inc. v. Nucor Corp.,* 2025 U.S. App. LEXIS 6204, *11 (5th Cir. Mar. 17, 2025) (internal quotation marks and citation omitted). Assertions of "parallel conduct that could just as well be independent action" are insufficient. *Id.* at *11-12.

To support his antitrust claims, Pease asserts that defendants' anti-competitive practices including "the proliferation of synthetic shares, naked short selling, and failures to deliver . . . collectively suppressed the price of MMTLP shares and harmed competition." SAC ¶ 285. The SAC also alleges (without factual support) that defendants' "coordinated actions" purportedly suppressed legitimate share prices, deprived shareholders of fair market value, and harmed competition, SAC ¶ 149, but fails to allege any agreement between the parties. Accordingly, the SAC fails to allege sufficient facts to support any antitrust claim.[19]

Moreover, the Supreme Court has also found that the securities laws preclude application of the antitrust laws where "the two are 'clearly incompatible.'" *Credit Suisse Sec. (USA) LLC v. Billing,* 551 U.S. 264, 275 (2007). To determine whether there is "sufficient incompatibility to warrant an implication of preclusion," courts look to the following factors: "(1) the existence of regulatory authority under the securities law to supervise the activities in question; (2) evidence that the responsible regulatory entities exercise that authority; . . . (3) a resulting risk that the securities and antitrust laws, if both applicable, would produce conflicting guidance, requirements, duties, privileges, or standards of conduct[; and] (4) . . . the possible conflict affected practices that lie squarely within an area of financial market activity that the securities law seeks to regulate." *Id.* at 275-76 (citing *Gordon v. NYSE,* 422 U.S. 659 (1975); *U.S. v. NASD, Inc.,* 422 U.S. 694 (1975)). Here, as discussed above, the allegations in the SAC all relate to FINRA's regulatory activities. *See supra.* Accordingly, Pease's antitrust claim is precluded by the Exchange Act.

For these reasons, Pease's antitrust claim should be dismissed with prejudice.

---

[19] Pease's reliance on *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001), SAC ¶ 149, is misplaced. Most significantly, the *Microsoft* case addressed allegations of monopolization rather than conspiracy to restrain trade. The *Microsoft* case has no precedential value here.

### F.    Pease's Constitutional Claims Fail

#### 1.    Pease Lacks Article III Standing to Pursue Any Constitutional Claims.

Pease lacks standing to assert claims based on any alleged constitutional claim, including "Constitutional Claims Under the Nondelegation Doctrine and Separation of Powers." SAC ¶ 287. To have such standing, Pease must show: (i) that he "has suffered . . . a concrete and particularized 'injury in fact'; (ii) that is 'fairly traceable to the challenged action of the defendant' and (iii) that his injury is 'likely to be redressed by a favorable judicial decision.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

Here, Count 17 of the SAC asserts only generalized grievances about the Appointments Clause and private nondelegation doctrine. *See* SAC ¶¶ 151-52. Without allegations of any "personal, particularized injury," Pease cannot establish Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 556 (1992) ("This Court has consistently held that a plaintiff claiming only a generally available grievance . . ., unconnected with a threatened concrete interest of his own, does not state an Article III case or controversy."); *see also Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (collecting cases). In fact, Pease does not predicate his purported constitutional claims upon FINRA's application of any particular rule as applied to him individually. Rather, Pease expressly states that his claim seeks, among other relief, to declare that "the structure and authority of Defendant FINRA are unconstitutional under the Appointments Clause, Nondelegation Doctrine, and Due Process Clause of the U.S. Constitution" and to declare that "FINRA's imposition of the indefinite U3 trading halt on December 9, 2022 . . . deprived Plaintiff and other investors of their constitutional rights under the Fifth Amendment's Due Process Clause by failing to provide adequate notice or procedural safeguards." SAC ¶ 290.

In other words, Pease is effectively challenging FINRA's existence. However, this is "precisely the kind of undifferentiated, generalized grievance" that is not redressable in federal

court. *See Lance v. Coffman,* 549 U.S. 437, 442 (2007) (per curiam). Pease cannot circumvent the constitutional bar on asserting generalized grievances by framing FINRA's very existence as a harm to him.

Challenges to a regulator's constitutional structure are not exempt from Article III's requirement that a plaintiff allege a concrete, particularized injury. As the Supreme Court has emphasized, constitutional-structure challenges remain "subject to the Article III requirements . . . applicable to all litigants." *Bond v. United States*, 564 U.S. 211, 225 (2011) (holding a litigant must "show actual or imminent harm that is concrete and particular" and that "[t]hese requirements must be satisfied before an individual may assert a constitutional claim."). Because the SAC does not assert a concrete, particularized injury to Pease that is fairly traceable to FINRA and redressable by a favorable judicial determination, Count 17 fails to state a claim upon which relief can be granted.

### 2.    FINRA is Not a State Actor.

Pease's constitutional claims are also fatally flawed because, to assert a constitutional violation, a plaintiff must "demonstrate 'that in denying plaintiff's constitutional rights, the defendant's conduct constituted state action.'" *D.L. Cromwell Invs., Inc. v. NASD Reg., Inc.*, 279 F.3d 155, 161 (2d Cir. 2002) (citation omitted); *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 256-57 (2d Cir. 2008) (dismissing First Amendment claims and other claims where plaintiff failed to plead state action); *Desiderio*, 191 F.3d at 206-07 (affirming dismissal of plaintiff's Fifth Amendment claim because plaintiff failed to show NASD's actions constituted state action). Courts have uniformly held that FINRA, like its predecessor the NASD and other SROs, "is a private actor, not a state actor." *Desiderio*, 191 F.3d at 206-07. *See also Mohlman v. FINRA*, 2020 WL 905269, at *6 (S.D. Ohio Feb. 25, 2020) ("Courts have held without exception

that FINRA is a private entity and not a state actor.") (collecting cases), *aff'd*, 977 F.3d 556 (6th Cir. 2020).[20]

Relying on *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), Pease asserts that FINRA's framework parallels that of the PCAOB, and therefore FINRA's conduct is subject to challenge. SAC ¶ 118. However, in *Free Enterprise Fund,* the Supreme Court invoked *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995) to explicitly distinguish between "*private self-regulatory organizations in the securities industry*", like FINRA from the PCAOB, which, "[u]nlike the self-regulatory organizations," is a "*Government-created, Government-appointed entity.*" 561 U.S. at 484-85 (emphasis added). The Court's contrast between "private" SROs and the PCAOB plainly demonstrates that an SRO "is *in fact* a private entity." *Lebron*, 513 U.S. at 382.

FINRA is a private, not-for-profit corporation that does not receive state or federal funding. *See Meyers*, 1996 WL 1742619, at *1; *see also Desiderio*, 191 F.3d at 206. No government official serves as a FINRA employee, and the government does not appoint any FINRA employees or officers. *Id.* Because FINRA is not a state actor, Pease's purported constitutional claims against FINRA fail as a matter of law. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991).

        3.    Pease Has No Basis to Challenge FINRA's Structure or Existence.

Pease makes alternative arguments that FINRA is subject to the Article II Appointments Clause (which applies to officers of the *federal government*) and that FINRA's authority exceeds

---

[20] *See further Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 138 (2d Cir. 2002) ("It is clear that NASD is not a state actor."); *Barbara v. New York Stock Exch.*, 99 F.3d 49, 58 (2d Cir. 1996); *Epstein v. SEC*, 416 F. App'x 142, 148 (3d Cir. 2010) ("Epstein cannot bring a constitutional due process claim against the NASD, because the NASD is a private actor, not a state actor.") (cleaned up); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 698 (3d Cir. 1979); *Kim v. FINRA*, 698 F. Supp. 3d 147, 161 (D.D.C. 2023); *Dobbins v. NASD*, 2007 WL 2407081, *3 (N.D. Ohio Aug. 22, 2007); *Graman v. NASD*, 1998 WL 294022, at * 3 (D.D.C. Apr. 27, 1998); *Meyers v. NASD*, 1996 WL 1742619, at *8-10 (E.D. Mich. Mar. 29, 1996) (NASD's regulatory actions do not constitute state action).

constitutional limits on the delegation of federal power to *private entities*. SAC ¶¶ 115-118. Pease's arguments are mutually exclusive and completely unsupported. Pease's Appointments Clause argument is foreclosed because, under *Lebron*, 513 U.S. at 382, FINRA is not part of the government. *See supra*. *Lebron* recognized an exceptional category of nominally private companies—in that case, Amtrak—that are actually "part of the Government" for constitutional purposes because the government "create[d]" the corporation for "governmental objectives" and "retains for itself permanent authority to appoint a majority of the directors of that corporation." *Id.* at 397, 400.

FINRA does not possess any of those characteristics: the government did not create FINRA, *see Scottsdale Cap. Advisors v. FINRA*, 678 F. Supp. 3d 88, 103 (D.D.C. 2023); the government does not appoint a single member of FINRA's board, *see* FINRA Board of Governors, *available at* https://www.finra.org/about/governance/finra-board-governors; and the government does not fund or otherwise control FINRA. *See Desiderio*, at 206-07; *Kim v. FINRA*, 698 F. Supp. 3d 147, 157-58 (D.D.C. 2023); *see also NHBPA II*, 107 F.4th 415, 440 (5th Cir. 2024), *pet. for cert. filed* (Oct. 16, 2024), (holding that a "private entity" is "not subject to Article II's Appointments Clause" or removal requirements and that "*Lebron* is the governing test to determine whether an entity is private or public").

Pease argues that members of FINRA's Board of Governors are subject to the Appointments Clause because they exercise "significant regulatory authority," SAC ¶ 177, or "significant quasi-governmental authority," *id.* ¶ 116. Here again, the Constitution's appointment and removal requirements apply only to government officials and to employees of nominally private companies that, under *Lebron* are part of the government. 513 U.S. at 378. Pease cannot overcome "*Lebron*['s] . . . insuperable hurdle" for demonstrating that a "private entity qualifies as part of the government for constitutional purposes." *NHBPA II*, 107 F.4th at 434, 437-439

(rejecting Appointments Clause challenge to HISA, a private self-regulatory organization modeled on FINRA).

Because FINRA is a private company that is not part of the government under *Lebron*, its board members and employees are not "Officers of the United States" subject to presidential appointment and removal.

Likewise, Pease's invocation of the private non-delegation doctrine is misplaced. The U.S. Supreme Court has long held that Congress may give a private entity, such as FINRA, some role in a regulatory program, provided it "function[s] subordinately" to, and is under the "authority and surveillance" of, a governmental body. *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940). In *Adkins*, for example, Congress did not unconstitutionally "delegate its legislative authority to the [coal] industry" in authorizing industry boards to propose regulations subject to a government agency's "approv[al]" because the agency's ultimate "authority" over those regulations meant that "law-making [was] not entrusted to the industry." *Id.* at 388, 399; *see also Currin v. Wallace*, 306 U.S. 1, 14-16 (1939) (upholding statute requiring industry members to ratify the government's regulations before they took effect); *United States v. Rock Royal Co-op.*, 307 U.S. 533, 577-78 (1939) (similar).

Because FINRA functions subordinately to the SEC, courts have determined that it does not violate the private nondelegation doctrine. *NHBPA I*, 53 F.4th at 877 (noting the "SEC-FINRA model…has been 'uniformly upheld' against private non-delegation challenges" (citations omitted)). "In case after case, courts have upheld this arrangement, reasoning that the SEC's ultimate control over the rules and their enforcement makes the [SROs] permissible aides and advisors." *Oklahoma v. U.S.*, 62 F.4th 221, 229 (6th Cir. 2023) (citing, *inter alia*, *Sorrell v. SEC*,

679 F.2d 1323, 1325-26 (9th Cir. 1982); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 697 (3d

Cir. 1979); *R.H. Johnson & Co. v. SEC*, 198 F.2d 690, 695 (2d. Cir. 1952)).[21]

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, FINRA respectfully requests that the Court dismiss the Second

Amended Complaint with prejudice.

Respectfully submitted,

David C. Kent
State Bar No. 11316400
david.kent@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
2323 Ross Avenue, Suite 1700
Dallas, Texas 75201
(469) 357-2500
(469) 327-0860 (fax)

*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*

---

[21] In making his private nondelegation doctrine claim, Pease relies on the D.C. Circuit's recent decision in *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314 (D.C. Cir. 2024). As the D.C. Circuit explicitly stated, that decision was "narrow and limited," to the expulsion of FINRA member firms in expedited disciplinary proceedings. *Id.* at 1330. Pease is not a FINRA member firm and is not subject to an expedited disciplinary proceeding. As such, the D.C. Circuit's *Alpine* decision is inapplicable to his claim.