IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| MATTHEW J. PEASE,<br><br>    Plaintiff,<br><br>   v.<br><br>SECURITIES AND EXCHANGE COMMISSION, FINANCIAL INDUSTRY REGULATORY AUTHORITY, JOHN BRDA, GREGORY MCCABE, NEXT BRIDGE HYDROCARBONS, INC.<br><br>    Defendants. | Case No.: 7:24-CV-00322-DC-RCG |

**PLAINTIFF'S RESPONSE TO THE SEC'S**
**NOTICE OF SUPPLEMENTAL AUTHORITY (ECF 96)**

**I. INTRODUCTION**

1.  Plaintiff Matthew J. Pease respectfully submits this Response to the SEC's Notice of Supplemental Authority (ECF 96). The SEC cites *Traudt v. Atkins*, No. 2:24-cv-01360 (D. Vt. Oct. 14, 2025). That citation is misplaced.[1]

2.  Traudt bears no resemblance to this action in terms of defendants, injuries, legal theories, facts, or remedies. The SEC's Notice omits every material distinction and, if accepted at face value, risks confusing two fundamentally different cases.

---

[1] The SEC's reference to the government shutdown as the reason for its delayed notice is immaterial; the Commission continued filing new enforcement actions in federal court during the same period, and a one-page Notice of Supplemental Authority requires no substantial agency resources.

3. This Response is submitted to clarify the record and ensure the issues remain properly framed for the Court.

## II. DIFFERENT PARTIES AND DIRECT CAUSATION

4. In Traudt, the only defendant was the SEC Chair. No SRO. No corporate actor. No individual defendants.

5. Here, the SAC names the parties responsible for the U3 halt and the surrounding misconduct, including:

    a. FINRA, which imposed the U3 halt.

    b. Next Bridge Hydrocarbons (NBH), which controlled the conversion process.

    c. Gregory McCabe and John Brda, whose misstatements induced investor reliance.

    d. The SEC, whose supervisory failures deepened the harm.

6. The Vermont court dismissed Traudt because the alleged injuries depended on "unfettered choices" of third parties not before the court. That causation problem does not exist here because all relevant actors are defendants.

## III. PLAINTIFF'S INJURY IS CONCRETE AND PAST, NOT SPECULATIVE

7. Traudt sought speculative, forward-looking relief: reopening trading under a hypothetical plan. The Vermont court found the requested remedy too conjectural to satisfy Article III.

8. Plaintiff alleges the opposite. The SAC pleads a concrete, completed injury:

    a. On December 9, 2022, Plaintiff held $2,568,000 in executable sell orders.

    b. FINRA's U3 halt caused those orders to be cancelled.

    c. The injury was immediate, quantifiable, and irreversible.

9. This is classic Article III injury-in-fact. Traudt did not address any comparable factual scenario.

## IV. DISTINCT LEGAL THEORIES

10. The SEC incorrectly suggests Plaintiff advances the same legal theories as Traudt. He does not.

11. Traudt relied on:

    a. *SEC v. Sloan*, 436 U.S. 103 (1978).

    b. Exchange Act § 12(k).

    c. A mandamus/APA theory compelling SEC action.

12. Plaintiff's SAC asserts entirely different claims, including:

    a. FINRA's ultra vires conduct under § 78o-3(b)(6) and Rule 6440(f)(3).

    b. State-actor liability under Brentwood, Free Enterprise Fund, Lebron, and Jarkesy.

    c. Private nondelegation doctrine violations.

    d. Appointments Clause defects.

    e. SEC supervisory failures under §§ 17A, 19, and 21.

    f. Scienter supported by FOIA-obtained regulatory emails.

13. None of these doctrines appeared in Traudt or were analyzed by the Vermont court. The cases are not legally comparable.

## V. THE SAC'S FACTUAL RECORD IS FAR STRONGER THAN IN TRAUDT

14. The SEC's Notice does not address the SAC's robust factual record, including:

    a. FOIA emails showing FINRA and SEC awareness of synthetic trading as early as November 29, 2021.

    b. December 5, 2022 communications confirming knowledge immediately before the halt.

    c. FINRA's failure to comply with Rule 6440 or provide notice.

    d. NBH's misleading statements regarding share structure and asset value.

    e. Direct linkage to Plaintiff's cancelled $2.568 million in sell orders.

15. Traudt contained no FOIA scienter evidence, no halted orders, no allegations of SRO misconduct, and no constitutional claims. The factual bases of the cases are entirely different.

## VI. REDRESSABILITY HERE IS DIRECT AND NON-SPECULATIVE

16. In Traudt, redressability failed because the requested remedy depended on hypothetical market conditions and independent actors.

17. Here, redressability is straightforward. Plaintiff seeks:

    a. Compensatory damages for a past financial loss.

    b. Declaratory relief addressing statutory and constitutional violations.

    c. Injunctive relief ensuring proper supervision going forward.

18. None of these remedies require speculation. Traudt has no bearing on the redressability analysis here.

## VII. TRAUDT DOES NOT ADDRESS THE CORE ISSUES BEFORE THIS COURT

19. The Vermont decision never considered:

4

    a. Whether FINRA exceeded statutory limits.

    b. Whether FINRA is a state actor when enforcing federal law.

    c. Whether Congress unconstitutionally delegated governmental power to a private SRO.

    d. Whether the SEC failed its supervisory duties under the Exchange Act.

20. These issues are central to Plaintiff's SAC. The SEC's authority does not address them.

## VIII. **CONCLUSION**

21. *Traudt v. Atkins* bears no resemblance to this action. It involves different defendants, different injuries, different legal theories, different facts, and different remedies.

22. Because the SEC's Notice omits all material distinctions and provides no guidance relevant to this Court's analysis, Plaintiff respectfully requests that the Court disregard the SEC's supplemental authority as irrelevant and unpersuasive.

Dated: November 17, 2025

Respectfully submitted,

/s/ Matthew J. Pease
Matthew J. Pease
Pro Se Plaintiff
1 Cobbler Lane
Amherst, NH 03031