IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| MATTHEW J. PEASE,<br>*Plaintiff*, | § § § | |
| v. | § § § | MO:24-CV-00322-DC-RCG |
| SECURITIES & EXCHANGE<br>COMMISSION; FINANCIAL<br>INDUSTRY REGULATORY<br>AUTHORITY; NEXT BRIDGE<br>HYDROCARBONS, INC.; JOHN<br>BRDA; and GREGORY MCCABE;<br>*Defendants*. | § § § § § § § § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendant Financial Industry Regulatory Authority's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 29).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the relevant case law, the Court **RECOMMENDS** the Financial Industry Regulatory Authority's Motion to Dismiss be **GRANTED**. (Doc. 29).

### I. BACKGROUND

Plaintiff Matthew J. Pease ("Plaintiff"), proceeding *pro se*, filed his Original Complaint in this Court on December 6, 2024. (Doc. 1). Plaintiff amended his Complaint once as a matter of right and a second time with leave of Court. (Docs. 3, 12). Plaintiff's Second Amended Complaint brings claims against five Defendants—Securities and Exchange Commission ("the Commission"); Financial Industry Regulatory Authority ("FINRA"); Next Bridge Hydrocarbons, Inc. ("NBH"); John Brda ("Brda"); and Gregory McCabe ("McCabe"). (Doc. 12).

---

1. All citations are to CM/ECF generated pagination unless otherwise noted.

The relevant factual allegations in Plaintiff's Second Amended Complaint are as follows. In June 2021, Torchlight Energy Resources, Inc. ("Torchlight") completed a reverse merger to form Meta Materials, Inc. *Id.* at 11. As part of the merger, Torchlight's oil and gas assets were spun off into a newly created private entity, Next Bridge Hydrocarbons, Inc. ("NBH"). *Id.* Shareholders were issued Non-Voting Series A Preferred Shares, designated as MMTLP, which were intended to represent private ownership in NBH. *Id.* Plaintiff alleges the MMTLP shares were not intended to be tradeable. *Id*. at 12, 16.

Plaintiff alleges, beginning in October 2021, MMTLP shares nevertheless began trading on the over-the-counter ("OTC") market months before any formal authorization or compliance with regulatory requirements. *Id*. During this period, Plaintiff alleges Torchlight experienced unprecedented trading volumes, raising concerns regarding the creation of synthetic shares and naked short selling and laying the groundwork for systemic market manipulation. *Id.* at 13. Based on these events, Plaintiff questions whether corporate officers intentionally structured the issuance of MMTLP shares in a manner that permitted unauthorized trading and created investor confusion, thereby inducing Plaintiff to "retain MMTLP shares under false pretenses." *Id.* at 13, 19, 32–33.

On December 9, 2022, FINRA halted trading of MMTLP shares, citing an "extraordinary event." *Id*. at 6. FINRA is a private, not-for-profit self-regulatory organization ("SRO") that is authorized by Congress to conduct daily regulation of the national securities markets, including the over-the-counter market, with oversight from the Commission. (*See* Doc. 29 at 9). FINRA is a registered national securities association under the Securities Exchange Act. *See id.* at 12. Plaintiff alleges FINRA implemented a U3 trading halt without providing advance notice, thereby depriving investors of the opportunity to react or seek legal recourse. *Id.* at 30.

According to Plaintiff, FINRA's U3 trading halt left tens of thousands of investors, including Plaintiff "unable to access their assets, reconcile their positions, or trade their shares." (Doc. 12 at 6). Later that month, MMTLP shares were exchanged on a one-to-one basis for shares of NBH, which is not publicly traded. *Id*. at 30. As a result, many shareholders have been unable to trade their NBH shares or recover the fair value of their investments. *Id.* at 8, 16, 30.

Plaintiff brings multiple causes of action against FINRA including: (1) violations of the Securities Exchange Act; (2) various common law claims; (3) antitrust claims; (4) and constitutional claims. Id. at 70–82. On April 30, 2025, FINRA filed a Rule 12(b)(2) and 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 29). Plaintiff and FINRA filed their respective Response and Reply. (Docs. 36, 40). Accordingly, this matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.  Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action when a court lacks personal jurisdiction over the defendant. In resolving a Rule 12(b)(2) motion, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 496 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). To carry that burden the plaintiff must plead a prima facie showing of personal jurisdiction. *Palmer v. Idalia Llorens Collection Agency, Inc.*, 434 F. Supp. 3d 462, 467 (E.D. Tex. 2020) (citing *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)). Additionally,

"allegations in the plaintiff's complaint are taken as true, except to the extent that they are contradicted by the defendant" and "[a]ny material and genuine, conflicting facts are resolved in favor of the plaintiff for the purpose of determining whether a prima facie case exists." *Id*.

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most

favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions."). "Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017).

### C. Rule 9(b)

Securities Exchange Act § 10(b) and Rule 10b-5 only provides a remedy for those victimized by securities fraud. "Fraud claims are subject to the heightened pleading standard of Rule 9(b), under which 'a party must state with particularity the circumstances constituting fraud.'" *Poe v. Bock*, No. EP-CV-17-00232, 2018 WL 4677901, at *2 (W.D. Tex. June 11, 2018) (quoting FED. R. CIV. P. 9(b)), *R. & R. adopted*, 2018 WL 4275839 (W.D. Tex. Sept. 7, 2018). The Fifth Circuit has interpreted this to mean a plaintiff "must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Stated differently, "[a] claim of fraud must allege the 'who, what, when, and where.'" *Big Thirst, Inc. v. Donoho*, 657 F. Supp. 3d 914, 924 (W.D. Tex. 2023) (quoting *Williams*, 112 F.3d at 178). Further, in securities fraud suits, the Private Securities Litigation

5

Reform Act "reinforces the particularity requirements of Rule 9(b), requiring the plaintiffs to state not only the time, place, the identity of the speaker, and the content of the alleged misrepresentation, but also to explain why the challenged statement or omission is false or misleading. The PSLRA *also* requires that the complaint 'with respect to *each* act or omission alleged' to be false or misleading 'state with *particularity facts* giving rise to a *strong* inference that *the defendant* acted with the required state of mind.'" *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362–63 (5th Cir. 2004) (emphasis in original) (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

## III.    DISCUSSION

### A.  Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

FINRA argues it is not subject to personal jurisdiction in this Court, so Plaintiff's Complaint should be dismissed under Rule 12(b)(2). (Doc. 29 at 17). In Texas, there are two requirements for a court to exercise personal jurisdiction over a non-resident defendant: "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). "Because Texas' long-arm statute has been held to extend to the limits of due process, only the second jurisdictional precondition must be examined." *Allstate Inc. v. Interline Brands, Inc.*, 997 F. Supp. 2d 501, 506 (N.D. Tex. 2014) (citing *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992)).

For personal jurisdiction to comport with due process, the plaintiff must show: (1) "the defendant purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' with that state such that it would reasonably anticipate being

6

haled into court there"; and (2) "exercising jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice." *Id*. (citing *Jones*, 954 F.2d at 1068). "The 'minimum contacts' prong of the due process analysis can be met through contacts giving rise to either specific or general jurisdiction." *Id*. (citing *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996)). To exercise general personal jurisdiction, a defendant's contacts with the forum state must be so "continuous and systematic as to render them essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotations omitted). When the defendant is a corporation, it is considered at home in the "corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). And, in an "exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State." *Id*. (internal quotations omitted). In contrast, specific jurisdiction "is established through the defendant's contacts with the forum state arising from, or related to, the cause of action." *Allstate Inc.*, 997 F. Supp. 2d at 506 (citations and quotation marks omitted).

Here, Plaintiff is unable to establish general or specific jurisdiction. FINRA cannot be considered "at home" in Texas—FINRA is incorporated in Delaware, and its principal place of business is in Washington, D.C., which Plaintiff does not dispute. (Doc. 29 at 19). As it relates to specific jurisdiction, in his Complaint, Plaintiff alleges only that FINRA is connected to Texas because its "actions . . . directly contributed to the harm suffered by the Plaintiff . . . in this district." (Doc. 12 at 4, 10). Plaintiff's Response argues "FINRA purposefully availed itself to Texas by regulating Texas-based broker-dealers . . . which executed MMTLP trades," "caused harm to Texas residents," and FINRA's "oversight and halt targeted Texas markets." (Doc. 36 at

3). In this case, however, Plaintiff is not a Texas citizen, he has made no showing FINRA is "at home" in Texas, he fails to allege any facts establishing that his claims arise out of or results from FINRA's forum-related contacts, and he makes no attempt to connect FINRA's Texas-based conduct to FINRA's conduct as it relates to Plaintiff. Because Plaintiff is a citizen of New Hampshire (Doc. 12 at 9), the Court finds this does not suffice to meet Plaintiff's burden. *Palmer*, 434 F. Supp. 3d at 467.  Thus, Plaintiff failed to establish FINRA's "minimum contacts" with Texas under either the general or specific personal jurisdiction theories.

Finally, to the extent Plaintiff requests jurisdictional discovery, that request should be denied. (Doc. 36). Jurisdictional discovery is only available if a party first makes "a preliminary showing of jurisdiction," which requires "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Salaiz v. Oscar Mgmt. Corp.*, No. 22-CV-114, 2025 WL 1794447, at *7 (W.D. Tex. June 25, 2025) (quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)). Plaintiff has not done so here.

Accordingly, the Court **RECOMMENDS** FINRA's Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction be **GRANTED** (Doc. 29) and his claims be **DISMISSED WITH PREJUDICE**. Further, the Court **RECOMMENDS** Plaintiff's request for jurisdictional discovery be **DENIED**. (Doc. 36).

### B.  FINRA's Absolute Regulatory Immunity

In addition to the Court lacking personal jurisdiction over FINRA, FINRA also argues, as an SRO, its regulatory immunity is absolute and bars all Plaintiff's claims against it. (Doc. 29 at 20). The Court agrees. It is well settled that "[a]s an SRO, FINRA and its officers are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities." *Xu v. Fin. Indus. Regul. Auth. Inc.*, 503 F. App'x 7, 8 (2d. Cir.

8

2012); *Austin Min. Secs., Inc. v. Nat'l. Assoc. of Secs. Dealers, Inc.*, 757 F.2d 676, 679 (5th Cir. 1985) ("[NASD, now FINRA] and its disciplinary officers have absolute immunity from further prosecution for personal liability on claims arising within the scope of their official duties."). In rebuttal, Plaintiff argues that because "immunity is limited to regulatory functions," FINRA is not entitled to immunity because it exceeded its authority and its MMTLP halt was an ad hoc intervention lacking rulemaking or transparency. (Doc. 36 at 4).

But the "misconduct alleged by [Plaintiff] falls squarely within FINRA's regulatory responsibilities." *Xu*, 503 F. App'x at 8. "FINRA's decision to halt MMTLP trading and alleged facilitation of misconduct by market makers and brokers [] are incident to FINRA's power to regulate the securities market." *Traudt v. Rubenstein*, No. 24-CV-782, 2025 WL 1795825, at *7 (D. Vt. June 30, 2025) (collecting cases where courts "have held that FINRA was immune from claims based on allegations very similar to those in this case") (citing *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 454 (S.D.N.Y. 2013) ("The capacity to suspend trading, irrespective of the identity of the decision-maker or the presence of an official SEC rule, is a quintessentially regulatory function.")). Further, "allegations of bad faith, malice, and even fraud—all of which may be relevant to a *qualified* immunity analysis—cannot, except in the most unusual of circumstances, overcome *absolute* immunity." *Xu*, 503 F. App'x at 8 ("Thus, it behooves the Court not to carve out a bad faith exception to the absolute immunity of an SRO as a matter not simply of logic but of intense practicality since otherwise the SRO's exercise of its quasi-governmental functions would be unduly hampered by disruptive and recriminatory lawsuits."); *Sparta Surgical Corp. v. Nat'l Assoc. of Secs. Dealers, Inc.*, 159 F.3d 1209, 1215 (9th Cir. 1998) (holding there is no bad faith exception to the absolute immunity doctrine and providing that "when Congress elected 'cooperative regulation' as the primary

9

means of regulating the over-the-counter market, the consequence was that self-regulatory organizations had to enjoy freedom from civil liability when they acted in their regulatory capacity"). Thus, FINRA enjoys absolute immunity for its conduct in this case and all Plaintiff's claims against FINRA are barred.[2]

Accordingly, the Court **RECOMMENDS** FINRA's Motion to Dismiss as to its regulatory immunity be **GRANTED**. (Doc. 29). Because FINRA's regulatory immunity bars Plaintiff's claims, the claims should be **DISMISSED WITH PREJUDICE**.

### C.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Even if the Court had personal jurisdiction and FINRA's regulatory immunity did not bar Plaintiff's claims, FINRA also argues he has failed to state an antitrust claim or a constitutional claim for which relief can be granted. The Court will discuss each in turn. (Doc. 29 at 17, 19).

### i.      Antitrust Claims

In his Complaint, Plaintiff alleges FINRA violated Section 1 of the Sherman Act and seeks damages under the Clayton Act. (Doc. 12 at 81). Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. As Plaintiff seems to plead a conspiracy theory (Doc. 12 at 81), to establish liability under § 1, Plaintiff must show that FINRA "(1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015). "Unlike a contract or other combination in restraint of trade, a

---

2. FINRA raises another argument in the alternative, asserting Plaintiff has no private cause of action against FINRA. (Doc. 29 at 14). As the Court has already found FINRA is entitled to absolute immunity and Plaintiff's claims against FINRA are barred, the Court need not discuss this alternative argument. *Park v. Fin. Indus. Regul. Auth. Inc.*, No. 23-CV-69, 2023 WL 11795601, at *3 n.2 (N.D. Ga. Sept. 25, 2023) ("FINRA further argues that, even if the challenged actions are not protected by absolute immunity, the Amended Complaint nonetheless fails to state a claim because . . . (ii) no statute provides a private right of action against SROs for 'acts or omissions in connection with its duties as a securities regulator.' As discussed below, the Court finds FINRA's absolute immunity argument dispositive. Therefore, the Court need not consider FINRA's remaining arguments.").

conspiracy violates the Sherman Act even without proof of injury because of the surreptitious, pernicious effect a conspiracy ultimately can have upon a free market. Violation of the Sherman Act is therefore not dependent on damage, although no damages can be recovered unless proved." *Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980, 986 (5th Cir. 1983). "Even though a conspiracy in unreasonable restraint of trade may be proved, to justify a private suit the plaintiff must additionally demonstrate injury under the standard of section 4 of the Clayton Act, 15 U.S.C. § 15." *Id*. at 987.

Plaintiff's allegations fail to state a claim for relief under § 1 of the Sherman Act. While Plaintiff generally states the relevant market is the "U.S. financial markets" (Doc. 12 at 5), he provides no facts to allow the Court to determine whether this may plausibly be considered a relevant geographic or cognizable product market for antitrust purposes. *Wampler v. Sw. Bell. Telephone Co.*, 597 F.3d 741, 744 (5th Cir. 2010) ("The first step in this analysis [of § 1 of the Sherman Act] is determining the relevant market, which itself is a function of the relevant product market and the relevant geographic market."); *RX Sols., Inc. v. Caremark, LLC*, No. 23-CV-100, 2025 WL 360656, at *5 (S.D. Miss. Jan. 31, 2025) ("The Amended Complaint refers to Defendants' alleged unfair monopolization of the 'prescription medication market.' But this conclusory description of the relevant market that Defendants purportedly seek to monopolize is insufficient because it does not define Plaintiff's proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, which is necessary to plead a legally sufficient product market."). As to the conspiracy element, Plaintiff simply states FINRA violated § 1 by proliferating synthetic shares, engaging in naked short selling, and through "failures to deliver which collectively suppressed the price of MMTLP shares, harmed competition, and caused financial harm to Plaintiff." (Doc. 12 at 81). This is insufficient to state

11

a claim. And even so, "[t]he primary purpose of section 1 is to prevent the diminution of competition in the marketing of goods and services, the sale of stock of a single company within the context of a takeover battle for that one company does not fall within this definition." *Kalmanovitz v. G. Heileman Brewing Co., Inc.*, 769 F.2d 152, 156 (3d Cir. 1985). And without sufficiently pleading an antitrust claim, Plaintiff also cannot recover damages under the Clayton Act.

Accordingly, the Court **RECOMMENDS** FINRA's Motion to Dismiss as to Plaintiff's claim for antitrust violation be **GRANTED** (Doc. 29) for failure to state a claim, and this claim should be **DISMISSED WITH PREJUDICE**.

### ii.    Constitutional Claims

Plaintiff also asserts several constitutional claims including alleged violations of the nondelegation doctrine and separation of powers principles, a violation the Fifth Amendment's Due Process Clause, and an alleged violation of the Article II Appointments Clause. (Doc. 12 at 38, 81).

The Court first concludes Plaintiff lacks Article III standing to pursue these constitutional claims. Article III of the United States Constitution limits federal courts' jurisdiction to cases and controversies. U.S. CONST. art. III § 2. "Among other things, that limitation requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295 (2022). "The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). To meet the first element, the injury suffered must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*

12

*(TOC), Inc.*, 528 U.S. 167, 180 (2000). The traceability or causation requirement "does not require a party to establish proximate causation, but only requires that the injury be 'fairly traceable' to the defendant." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011) (citing *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)). Finally, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 181.

Here, Plaintiff alleges "FINRA, as a private self-regulatory organization, has improperly exercised legislative, executive, and judicial powers without meaningful government oversight, violating the nondelegation doctrine and separation of powers principles." (Doc. 12 at 81). However, Plaintiff does not allege a personal, concrete, and particularized injury arising from these alleged structural defects. *See Lujan*, 504 U.S. at 556 ("This Court has consistently held that a plaintiff claiming only a generally available grievance . . ., unconnected with a threatened concrete interest of his own, does not state an Article III case or controversy."); *see also Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013). Instead, Plaintiff raised a generalized challenge to FINRA's institutional authority and structure. (*See* Doc. 12 at 38, 81). Specifically, Plaintiff contends "the structure and authority of Defendant FINRA are unconstitutional under the Appointments Clause, Nondelegation Doctrine, and Due Process Clause of the U.S. Constitution" and asks the Court to declare "FINRA's imposition of the indefinite U3 trading halt on December 9, 2022 . . . deprived Plaintiff and other investors of their constitutional rights." *Id.* at 82. Such allegations are insufficient to confer standing. A plaintiff "raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws . . . does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74. Such allegations are "precisely the kind of

undifferentiated, generalized grievance" that is not redressable in federal court. *See Lance v. Coffman*, 549 U.S. 437, 442 (2007).

Plaintiff's Fifth Amendment due process claim independently fails for an additional reason. The "Fifth Amendment only applies to violations of one's constitutional rights by the United States or federal actors." *Collins v. Garcia*, No. 1-19-CV-1097, 2020 WL 2733953, at *6 (W.D. Tex. May 26, 2020) (citing *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000)). And FINRA is a private actor, not a state actor. *Desiderio v. Nat'l Assoc. of Secs. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999) ("Indeed, we have already ruled that the New York Stock Exchange—a self-regulatory private organization like the NASD [FINRA's predecessor]—is not a state actor."); *Mohlman v. Fin. Indus. Regul. Auth., Inc.*, No. 19-CV-154, 2020 WL 905269, at *6 (S.D. Ohio Feb. 25, 2020) (collecting cases) ("Courts have held without exception that FINRA is a private entity and not a state actor."). Accordingly, because FINRA is a private entity, Plaintiff's Fifth Amendment due process claim fails as a matter of law.

Lastly, Plaintiff's Appointments Clause challenge fails. (Doc. 12 at 38). Plaintiff argues FINRA is subject to Article II's Appointments Clause, and its authority exceeds constitutional limits on the delegations of federal power to private entities. (Doc. 12 at 38–39). However, as discussed above, FINRA is a private entity and not part of the federal government. *Mohlman*, WL 905269, at *6. Nor does FINRA fall within the narrow category of nominally private corporations deemed "part of the Government" for constitutional purposes recognized under *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 397-400 (1995). FINRA was not created by the government, and the government does not retain permanent authority to appoint a majority of its directors. *See id.*; *see also Scottsdale Cap. Advisors v. FINRA*, 678 F. Supp. 3d 88, 103 (D.D.C. 2023). Because FINRA is not part of the federal government under *Lebron*, Article II's

14

Appointments Clause does not apply, and Plaintiff's Appointments Clause claim should be dismissed.

Accordingly, the Court **RECOMMENDS** FINRA's Motion to Dismiss as to Plaintiff's constitutional claims be **GRANTED** (Doc. 29) for failure to state a claim, and these claims should be **DISMISSED WITH PREJUDICE**.

### D. Plaintiff's Request for Leave to Amend

In his Response, Plaintiff requests the Court grant him leave to amend his Second Amended Complaint. (Doc. 36 at 6). Federal Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Rule 15(a) "favors granting leave to amend unless a substantial reason exists, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Smith v. McDonough*, No. 22-CV-01383, 2023 WL 5918322, at *9 (W.D. Tex. Sept. 8, 2023) (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)); *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) ("While it is true that the court should freely give a party leave to amend its pleadings when justice so requires, such leave is not required where, as here, the movant contends that his pleadings sufficed to state a . . . claim throughout his briefing in opposition to the Rule 12[(b)(6)] motion and fails to apprise the district court of the facts that he would plead in an amended complaint, if necessary, to cure any deficiencies.") (internal citations, quotations and alterations omitted). Based on this rationale, courts typically provide plaintiffs with the opportunity to amend a complaint before dismissal; however, dismissal "is appropriate when the plaintiff was previously provided ample opportunity to cure the deficiencies." *Id*. (citing *Foman*

15

*v. Davis*, 371 U.S. 182, 182 (1962); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

In this case, Plaintiff has amended his Complaint once as of right and once more with leave of Court. (Docs. 3, 12). Further, Plaintiff makes only a cursory mention of his request to amend, does not state the substance of his proposed amendment, nor does he attach an amended complaint for the Court. (Doc. 36). Plaintiff also asserts the Second Amended Complaint refined his case to present "clear and well-supported claims" and that he made "substantial revisions to clarify claims, streamline allegations, and strengthen legal arguments to comply with federal pleading standards." (Doc. 8 at 1–2). Accordingly, the Court finds Plaintiff has been given ample opportunity to cure deficiencies in his pleadings and that further amendment would be futile. *See Smith*, 2023 WL 5918322, at *9. Thus, the Court **RECOMMENDS** Plaintiff's request to amend his complaint be **DENIED**. (Doc. 36)

## IV.   RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** FINRA's Motions to Dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(2) and, alternatively 12(b)(6), be **GRANTED**. (Doc. 29). Further, the Court **RECOMMENDS** FINRA's Motion to Dismiss as to Plaintiff's claims for violations of the Securities Exchange Act, common law claims, antitrust claims, and constitutional violations be **DISMISSED WITH PREJUDICE**. Finally, the Court **RECOMMENDS** Plaintiff's request for jurisdictional discovery and leave to amend be **DENIED**. (Doc. 36).

SIGNED this 30th day of January, 2026.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

16

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).