**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **MATTHEW J. PEASE,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **MO:24-CV-00322-DC-RCG** |
| | § | |
| **SECURITIES & EXCHANGE** | § | |
| **COMMISSION; FINANCIAL** | § | |
| **INDUSTRY REGULATORY** | § | |
| **AUTHORITY; NEXT BRIDGE** | § | |
| **HYDROCARBONS, INC.; JOHN** | § | |
| **BRDA; and GREGORY MCCABE;** | § | |
| *Defendants*. | § | |

<u>**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**</u>

BEFORE THE COURT is Defendant Next Bridge Hydrocarbon's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 59).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the relevant case law, the Court **RECOMMENDS** Next Bridge Hydrocarbon's Motion to Dismiss be **GRANTED**. (Doc. 59).

### I.    BACKGROUND

Plaintiff Matthew J. Pease ("Plaintiff"), proceeding *pro se*, filed his Original Complaint in this Court on December 6, 2024. (Doc. 1). Plaintiff amended his Complaint once as a matter of right and a second time with leave of Court. (Docs. 3, 12). Plaintiff's Second Amended Complaint brings claims against five Defendants—Securities and Exchange Commission ("the Commission"); Financial Industry Regulatory Authority ("FINRA"); Next Bridge Hydrocarbon ("NBH"); John Brda ("Brda"); and Gregory McCabe ("McCabe"). (Doc. 12).

---

1. All citations are to CM/ECF generated pagination unless otherwise noted.

The relevant factual allegations in Plaintiff's Second Amended Complaint are as follows. In June 2021, Torchlight Energy Resources, Inc. ("Torchlight") completed a reverse merger to form Meta Materials, Inc. *Id.* at 11. As part of the merger, Torchlight's oil and gas assets were spun off into a newly created private entity, Next Bridge Hydrocarbons, Inc. *Id.* Shareholders were issued Non-Voting Series A Preferred Shares, designated as MMTLP, which were intended to represent private ownership in NBH. *Id.* Plaintiff alleges the MMTLP shares were not intended to be tradeable. *Id*. at 12, 16.

Plaintiff alleges, beginning in October 2021, MMTLP shares nevertheless began trading on the over-the-counter ("OTC") market months before any formal authorization or compliance with regulatory requirements. *Id*. During this period, Plaintiff alleges Torchlight experienced unprecedented trading volumes, raising concerns regarding the creation of synthetic shares and naked short selling and laying the groundwork for systemic market manipulation. *Id.* at 13. Based on these events, Plaintiff questions whether corporate officers intentionally structured the issuance of MMTLP shares in a manner that permitted unauthorized trading and created investor confusion, thereby inducing Plaintiff to "retain MMTLP shares under false pretenses." *Id.* at 13, 19, 32–33.

On December 9, 2022, FINRA halted trading of MMTLP shares, citing an "extraordinary event." *Id*. at 6. FINRA is a private, not-for-profit self-regulatory organization ("SRO") that is authorized by Congress to conduct daily regulation of the national securities markets, including the over-the-counter market, with oversight from the Commission. (*See* Doc. 29 at 9). FINRA is a registered national securities association under the Securities Exchange Act. *See id.* at 12. Plaintiff alleges FINRA implemented a U3 trading halt without providing advance notice, thereby depriving investors of the opportunity to react or seek legal recourse. (Doc. 12 at 30).

According to Plaintiff, FINRA's U3 trading halt left tens of thousands of investors, including Plaintiff "unable to access their assets, reconcile their positions, or trade their shares." *Id.* at 6. Later that month, MMTLP shares were exchanged on a one-to-one basis for shares of NBH, which is not publicly traded. *Id.* at 30. As a result, many shareholders have been unable to trade their NBH shares or recover the fair value of their investments. *Id.* at 8, 16, 30.

Plaintiff brings five causes of action against NBH: (1) violation of the Sarbanes-Oxley Act (15 U.S.C § 7201); (2) violation of Regulation FD (17 C.F.R. § 243.100); (3) negligent or intentional infliction of emotional distress; (4) conspiracy to commit fraud; and (5) violation of the Sherman Antitrust Act (15 U.S.C § 1). (Doc. 12 at 73–82). On June 16, 2025, NBH filed a Rule 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 59).  Plaintiff and NBH filed their respective Response and Reply. (Docs. 66, 70). Accordingly, this matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3)

3

"a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions."). "Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017).

**B. Rule 9(b)**

"Fraud claims are subject to the heightened pleading standard of Rule 9(b), under which 'a party must state with particularity the circumstances constituting fraud.'" *Poe v. Bock*, No. CV- 17-00232, 2018 WL 4677901, at *2 (W.D. Tex. June 11, 2018) (quoting FED. R. CIV. P. 9(b)), *R. & R. adopted*, 2018 WL 4275839 (W.D. Tex. Sept. 7, 2018). The Fifth Circuit has interpreted this to mean a plaintiff "must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Stated differently, "[a] claim of fraud must allege the 'who, what, when, and where.'" *Big Thirst, Inc. v. Donoho*, 657 F. Supp. 3d 914, 924 (W.D. Tex. 2023) (quoting *Williams*, 112 F.3d at 178). Further, in securities fraud suits, the Private Securities Litigation Reform Act "reinforces the particularity requirements of Rule 9(b), requiring the plaintiffs to state not only the time, place, the identity of the speaker, and the content of the alleged misrepresentation, but also to explain why the challenged statement or omission is false or misleading. The PSLRA *also* requires that the complaint 'with respect to *each* act or omission alleged' to be false or misleading 'state with *particularity facts* giving rise to a *strong* inference that *the defendant* acted with the required state of mind.'" *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362–63 (5th Cir. 2004) (emphasis in original) (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

### III.  DISCUSSION

#### A.  Sarbanes-Oxley Act Claims

In its Motion to Dismiss, NBH argues Plaintiff has failed to establish statutory standing for his claim under the Sarbanes-Oxley Act ("SOX"), 15 U.S.C. § 7201 *et seq*. (Doc. 59  at 7). Plaintiff does not identify a specific statutory provision, but his repeated allegations that Defendants "fail[ed] to maintain accurate records" and "provide full and accurate financial

disclosures" suggest he is asserting a claim under 15 U.S.C. § 7241. That section requires the Chief Executive and Chief Financial Officer of every registered and publicly traded company to certify annually the general effectiveness of the company's internal controls and procedures. 15 U.S.C. § 7241(a); *Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 231 (S.D.N.Y. 2008). Importantly, however, "there is no private right of action under those sections of SOX that deal with the statute's reporting requirements." *Walzer v. UAL Corp.*, No. 05 CIV. 0581, 2008 WL 87944, at *2 (S.D.N.Y. Jan. 2, 2008), *aff'd*, 351 F. App'x 551 (2d Cir. 2009); *see In re BISYS Group Inc. Derivative Action*, 396 F. Supp. 2d 463 (S.D.N.Y. 2005). The statutory rights of action SOX does create—relating to insider trading by frozen pension plans, 15 U.S.C. § 7244(a)(2)(B), and retaliation against corporate whistleblowers, 18 U.S.C. § 1514A(b)—are unrelated to the allegations pleaded by Plaintiff. *See Li v. Ali Baba Grp. Holding Ltd.*, No. 19-CV-11629, 2021 WL 4084574, at *4 (S.D.N.Y. Sept. 7, 2021). Because Plaintiff's allegations fall outside the limited circumstances in which Congress authorized a private cause of action under SOX, his claims fail as a matter of law. *See Cohen v. Viray*, 622 F.3d 188, 194 (2d Cir. 2010) (holding no basis to infer a right of action under SOX other than those that expressly "do provide a private cause of action").

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's claim for violation of Sarbanes-Oxley Act be **GRANTED** (Doc. 59) for failure to state a claim, and this claim should be **DISMISSED WITH PREJUDICE**.

**B. Violation of Regulation FD**

Plaintiff next alleges NBH violated Regulation FD, 17 C.F.R. § 243.100 *et seq.*, by "selectively providing material information to certain parties while withholding key disclosures from retail investors." (Doc. 12 at 74). In general terms, Regulation FD prohibits a company and

6

its senior officials from privately disclosing any material nonpublic information regarding the company or its securities to certain persons such as analysts and institutional investors. *SEC v. Siebel Sys., Inc.*, 384 F. Supp. 2d 694, 696 (S.D.N.Y. 2005). However, it is well established that Regulation FD does not create a private cause of action and is instead enforceable exclusively by the Commission. *See Final Rule: Selective Disclosure and Insider Trading*, 65 Fed. Reg. 51716, 51718 (August 24, 2000) (stating that Regulation FD "would not provide a basis for private liability"); *Id.* at 51726 ("[P]rivate plaintiffs cannot rely on an issuer's violation of Regulation FD as a basis for a private action alleging Rule 10b-5 violations."). Plaintiff's own Response concedes this point, acknowledging Regulation FD does not provide a private right of action. (Doc. 66 at 4). In the absence of a private right of action, Plaintiff cannot maintain a claim for violation of Regulation FD as a matter of law.

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's claim for violation of Regulation FD be **GRANTED** (Doc. 59), and this claim be **DISMISSED WITH PREJUDICE**.

### C. Negligent or Intentional Infliction of Emotional Distress

Plaintiff brings a cause of action for negligent or intentional infliction of emotional distress against all Defendants. (Doc. 12 at 78). Under this claim, Plaintiff asserts "Defendants, through their negligent and intentional actions, caused Plaintiff severe emotional distress" and "made misrepresentations and omissions that created prolonged uncertainty about the status and value of Plaintiff's shares, compounding the emotional harm." *Id.* At the outset, Plaintiff "cannot recover for negligent infliction of emotional distress because Texas does not recognize a cause of action under this theory." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 224 (5th Cir. 2013) (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).

The tort of intentional infliction of emotional distress ("IIED") requires proof of the following elements: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the conduct caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Twyman*, 855 S.W.2d at 621–22. "Extreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (quoting *Twyman*, 855 S.W.2d at 621). The Texas Supreme Court has repeatedly recognized that an IIED claim is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has *no other* recognized theory of redress." *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998) (emphasis added). Thus, "[w]here the gravamen of a plaintiff's complaint is really another tort, [IIED] should not be available." *Hoffmann-La Roche*, 114 S.W.3d at 447.

Here, IIED is not Plaintiff's only recognized theory of redressability, thus Plaintiff is not permitted to recover under this claim. Even if IIED was a claim available to Plaintiff, he does not plausibly allege the elements as to NBH. In his Complaint, Plaintiff wholly fails to provide any facts to tie NBH to the alleged "negligent and intentional actions" he experiences. And the misrepresentations and omissions that Plaintiff contends "created prolonged uncertainty about the status and value of Plaintiff's shares, compounding the emotional harm" fall short of the extreme and outrageous standard which is required to plead a claim for IIED. *Hoffmann-La Roche Inc.*, 144 S.W.3d at 445.

8

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's claim for negligent or intentional infliction of emotional distress be **GRANTED** (Doc. 59), and this claim be **DISMISSED WITH PREJUDICE**.

### D. Conspiracy to Commit Fraud

Under his conspiracy to commit fraud claim, Plaintiff alleges Defendants "conspired to commit fraud by facilitating the creation and proliferation of synthetic shares." (Doc. 12 at 79). When a plaintiff's claims are grounded in fraud, the plaintiff must satisfy the heightened pleading requirements of Rule 9(b). Rule 9(b)'s particularity requirement generally demands the complaint identify the "who, what, when, where, and how" of the allegedly fraudulent content. *See U.S. ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417F.3d 450, 453 (5th Cir. 2005). "What constitutes particularity will necessarily differ with the facts of each case." *Afshani v. Spirit SPE Portfolio 2006-1, LLC*, No. 21-10137, 2022 WL 964201, at \*3 (5th Cir. Mar. 30, 2022) (quotation omitted). Nonetheless, Rule 9(b) sets a "high bar." *Colonial Oaks Assisted Living Lafayette, LLC v. Hannie Dev., Inc.*, 972 F.3d 684, 694 (5th Cir. 2020). Finally, Rule 9(b)'s heightened pleading standard applies to conspiracy to commit fraud claims. *Cavazos v. Allstate Vehicle & Prop. Ins.*, No. 17-CV-368, 2017 WL 11317905, at \*2 (S.D. Tex. Oct. 27, 2017).

In this case, Plaintiff has failed to articulate with particularity the fraudulent conduct committed by NBH that resulted in harm to him. Plaintiff's Complaint includes allegations that Defendants "failed to produce a publicly available reconciliation report confirming the total number of MMTLP shares converted to NBH shares," and "misled investors through false statements and omissions." (Doc. 12 at 69, 79). Although these allegations describe a sequence of events in some detail, they still fail to satisfy Rule 9(b). Plaintiff does not allege facts showing

any specific representations were false when made. The allegation that Defendants "misled investors through false statements and omissions" reflects Plaintiff's characterization of events and speculation about Defendant's motives, not particularized factual allegations of fraud. *See Herrmann Holdings Ltd.*, 302 F.3d at 565 (explaining the plaintiff must explain why the statement was fraudulent when made). Plaintiff's repeated assertions that Defendants "conspired to commit fraud," "misled . . . through false statements," or "engaged in manipulative practices" are conclusory allegations of Defendants' supposed conduct. Although "[Defendants'] malice, intent, or knowledge 'may be averred generally,'" Plaintiff must still "set forth specific facts that support an inference of fraud." *Colonial Oaks*, 972 F.3d at 689.

Here, Plaintiff failed to articulate any specific fraudulent act NBH engaged in. Instead, Plaintiff attempts to group NBH with Defendants as a whole. *See Callier v. Nat'l United Grp., LLC*, No. 21-CV-71, 2021 WL 5393829, at *3 (W.D. Tex. Nov. 17, 2021) ("[G]eneral assertions directed at no one in particular are not sufficient to raise an inference of plausibility against a particular defendant."); (Doc. 12 at 69, 79). Moreover, Plaintiff fails to articulate any statements made by NBH, and he does not explain when, where, or why they were made. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997). Because Plaintiff does not provide this information, the Court would have to make guesses to fill in the blanks, but "Rule 9(b) does not allow the plaintiffs to force the defendants—or the court—to make such assumptions." *Colonial Oaks*, 972 F.3d at 694–95. Thus, even accepting Plaintiff's allegations as true, his claim for conspiracy to commit fraud fails to meet Rule 9(b)'s heightened pleading standard and should be dismissed.

10

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's claim for conspiracy to commit fraud be **GRANTED** (Doc. 59), and this claim should be **DISMISSED WITH PREJUDICE**.

### E.  Antitrust Claims

In his Complaint, Plaintiff brings a cause of action for a violation of the Sherman Antitrust Act against all Defendants. (Doc. 59 at 12). Plaintiff does not identify NBH specifically, but states "Defendants, including FINRA and certain market participants, engaged in anticompetitive practices that distorted the market for MMTLP shares" and "these actions violat[ed] . . . the Sherman Act." (Doc. 12 at 81). NBH move to dismiss Plaintiff's antitrust claims arguing Plaintiff failed to establish "antitrust standing" to bring an antitrust claim and failed to state a claim for a violation of the Sherman Antitrust Act. (Doc. 59 at 12).  The Court addresses these arguments below.

#### i.    Antitrust Standing

NBH first argues Plaintiff failed to establish "antitrust standing" to bring a claim under § 1 of the Sherman Act or the Clayton Act. (Doc. 59 at 13). With regard to antitrust standing, the Supreme Court has explained, "Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977); *Norris v. Hearst Trust*, 500 F.3d 454, 465 (5th Cir. 2007).

Here, Plaintiff does not specifically identify NBH but alleges "Defendants, including FINRA and certain market participants, engaged in anticompetitive practices that distorted the

market for MMTLP shares." (Doc. 12 at 81). Plaintiff further claims these practices "included the proliferation of synthetic shares, naked short selling, and failures to deliver, which collectively suppressed the price of MMTLP shares and harmed competition." *Id.* Based on the facts pleaded, however, Plaintiff's alleged injury is not "attributable to an anti-competitive aspect of the practice under scrutiny." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). As a result, Plaintiff's claims cannot proceed because he has not shown NBH's actions caused an antitrust injury.

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's antitrust claims be **GRANTED** (Doc. 59) for lack of standing, and this claim be **DISMISSED WITH PREJUDICE**.

### ii.    Failure to State a Claim

NBH next argues, even if Plaintiff did establish standing, his Second Amended Complaint is completely void of any allegations of any of the elements necessary to prove a claim under § 1 of the Sherman Act. (Doc. 59 at 13). Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. As Plaintiff seems to plead a conspiracy theory (Doc. 12 at 81), to establish liability under § 1, Plaintiff must show that NBH "(1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015). "Unlike a contract or other combination in restraint of trade, a conspiracy violates the Sherman Act even without proof of injury because of the surreptitious, pernicious effect a conspiracy ultimately can have upon a free market. Violation of the Sherman Act is therefore not dependent on damage, although no damages can be recovered unless proved." *Multiflex, Inc. v.*

*Samuel Moore & Co.*, 709 F.2d 980, 986 (5th Cir. 1983). "Even though a conspiracy in unreasonable restraint of trade may be proved, to justify a private suit the plaintiff must additionally demonstrate injury under the standard of section 4 of the Clayton Act, 15 U.S.C. § 15." *Id*. at 987.

Plaintiff's allegations fail to state a claim for relief under § 1 of the Sherman Act. While Plaintiff generally states the relevant market is the "U.S. financial markets" (Doc. 12 at 5), he provides no facts to allow the Court to determine whether this may plausibly be considered a relevant geographic or cognizable product market for antitrust purposes. *Wampler v. Sw. Bell. Telephone Co.*, 597 F.3d 741, 744 (5th Cir. 2010) ("The first step in this analysis [of § 1 of the Sherman Act] is determining the relevant market, which itself is a function of the relevant product market and the relevant geographic market."); *RX Sols., Inc. v. Caremark, LLC*, No. 23-CV-100, 2025 WL 360656, at *5 (S.D. Miss. Jan. 31, 2025) ("The Amended Complaint refers to Defendants' alleged unfair monopolization of the 'prescription medication market.' But this conclusory description of the relevant market that Defendants purportedly seek to monopolize is insufficient because it does not define Plaintiff's proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, which is necessary to plead a legally sufficient product market."). As to the conspiracy element, Plaintiff simply states Defendants violated § 1 by proliferating synthetic shares, engaging in naked short selling, and through "failures to deliver which collectively suppressed the price of MMTLP shares, harmed competition, and caused financial harm to Plaintiff." (Doc. 12 at 81). This is insufficient to state a claim. And even so, "[t]he primary purpose of section 1 is to prevent the diminution of competition in the marketing of goods and services, the sale of stock of a single company within the context of a takeover battle for that one company does not fall within this definition."

13

*Kalmanovitz v. G. Heileman Brewing Co., Inc.*, 769 F.2d 152, 156 (3d Cir. 1985). And without sufficiently pleading an antitrust claim, Plaintiff also cannot recover damages under the Clayton Act.

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's claim for violation of the Sherman Antitrust Act be **GRANTED** (Doc. 59) for failure to state a claim, and this claim should be **DISMISSED WITH PREJUDICE**.

### F. Plaintiff's Request for Leave to Amend

In his Response, Plaintiff requests the Court grant him leave to amend his Second Amended Complaint. (Doc. 66 at 10). Federal Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Rule 15(a) "favors granting leave to amend unless a substantial reason exists, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Smith v. McDonough*, No. 22-CV-01383, 2023 WL 5918322, at *9 (W.D. Tex. Sept. 8, 2023) (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)); *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) ("While it is true that the court should freely give a party leave to amend its pleadings when justice so requires, such leave is not required where, as here, the movant contends that his pleadings sufficed to state a . . . claim throughout his briefing in opposition to the Rule 12[(b)(6)] motion and fails to apprise the district court of the facts that he would plead in an amended complaint, if necessary, to cure any deficiencies.") (internal citations, quotations and alterations omitted). Based on this rationale, courts typically provide plaintiffs with the opportunity to amend a complaint before dismissal; however, dismissal "is appropriate when the plaintiff was previously provided ample opportunity to cure the deficiencies." *Id*. (citing *Foman*

14

*v. Davis*, 371 U.S. 182, 182 (1962); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

In this case, Plaintiff has amended his Complaint once as of right and once more with leave of Court. (Docs. 3, 12). Further, Plaintiff makes only a cursory mention of his request to amend, does not state the substance of his proposed amendment, nor does he attach an amended complaint for the Court. (Doc. 66). Plaintiff also asserts the Second Amended Complaint already refined his case to present "clear and well-supported claims" and that he made "substantial revisions to clarify claims, streamline allegations, and strengthen legal arguments to comply with federal pleading standards." (Doc. 8 at 1–2). Accordingly, the Court finds Plaintiff has been given ample opportunity to cure deficiencies in his pleadings and that further amendment would be futile. *See Smith*, 2023 WL 5918322, at *9. Thus, the Court **RECOMMENDS** Plaintiff's request to amend his complaint be **DENIED**. (Doc. 66).

## IV.   RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** NBH's Rule 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint be **GRANTED**. (Doc. 59). Further, the Court **RECOMMENDS** Plaintiff's claims as to NBH for a violation of the Sarbanes-Oxley Act (15 U.S.C § 7201), violation of Regulation FD, negligent or intentional infliction of emotional distress, conspiracy to commit fraud, and violation of the Sherman Antitrust Act (15 U.S.C § 1), be **DISMISSED WITH PREJUDICE**. Finally, the Court **RECOMMENDS** Plaintiff's request to amend his Complaint be **DENIED**. (Doc. 66).

SIGNED this 30th day of January, 2026.

_____
RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

16

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

17