**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **MATTHEW J. PEASE,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **MO:24-CV-00322-DC-RCG** |
| | § | |
| **SECURITIES & EXCHANGE** | § | |
| **COMMISSION; FINANCIAL** | § | |
| **INDUSTRY REGULATORY** | § | |
| **AUTHORITY; NEXT BRIDGE** | § | |
| **HYDROCARBONS, INC.; JOHN** | § | |
| **BRDA; and GREGORY MCCABE;** | § | |
| *Defendants*. | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendant Securities and Exchange Commission's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 35).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the relevant case law, the Court **RECOMMENDS** the Securities and Exchange Commission's Motion to Dismiss be **GRANTED**. (Doc. 35).

## I.   BACKGROUND

Plaintiff Matthew J. Pease ("Plaintiff"), proceeding *pro se*, filed his Original Complaint in this Court on December 6, 2024. (Doc. 1). Plaintiff amended his Complaint once as a matter of right and a second time with leave of Court. (Docs. 3, 12). Plaintiff's Second Amended Complaint brings claims against five Defendants—Securities and Exchange Commission ("the Commission"); Financial Industry Regulatory Authority ("FINRA"); Next Bridge Hydrocarbons, Inc. ("NBH"); John Brda ("Brda"); and Gregory McCabe ("McCabe"). (Doc. 12).

---

1. All citations are to CM/ECF generated pagination unless otherwise noted.

The relevant factual allegations in Plaintiff's Second Amended Complaint are as follows. In June 2021, Torchlight Energy Resources, Inc. ("Torchlight") completed a reverse merger to form Meta Materials, Inc. *Id.* at 11. As part of the merger, Torchlight's oil and gas assets were spun off into a newly created private entity, Next Bridge Hydrocarbons, Inc. *Id.* Shareholders were issued Non-Voting Series A Preferred Shares, designated as MMTLP, which were intended to represent private ownership in NBH. *Id.* Plaintiff alleges the MMTLP shares were not intended to be tradeable. *Id*. at 12, 16.

Plaintiff alleges, beginning in October 2021, MMTLP shares nevertheless began trading on the over-the-counter ("OTC") market months before any formal authorization or compliance with regulatory requirements. *Id*. During this period, Plaintiff alleges Torchlight experienced unprecedented trading volumes, raising concerns regarding the creation of synthetic shares and naked short selling and laying the groundwork for systemic market manipulation. *Id.* at 13. Based on these events, Plaintiff questions whether corporate officers intentionally structured the issuance of MMTLP shares in a manner that permitted unauthorized trading and created investor confusion, thereby inducing Plaintiff to "retain MMTLP shares under false pretenses." *Id.* at 13, 19, 32–33.

On December 9, 2022, FINRA halted trading of MMTLP shares, citing an "extraordinary event." *Id*. at 6. FINRA is a private, not-for-profit self-regulatory organization ("SRO") that is authorized by Congress to conduct daily regulation of the national securities markets, including the over-the-counter market, with oversight from the Commission. (*See* Doc. 29 at 9). FINRA is a registered national securities association under the Securities Exchange Act. *See id.* at 12. Plaintiff alleges FINRA implemented a U3 trading halt without providing advance notice, thereby depriving investors of the opportunity to react or seek legal recourse. *Id.* at 30.

According to Plaintiff, FINRA's U3 trading halt left tens of thousands of investors, including Plaintiff "unable to access their assets, reconcile their positions, or trade their shares." (Doc. 12 at 6). With respect to the Commission specifically, Plaintiff alleges it "failed to supervise FINRA's imposition of the U3 trading halt" and "failed to take any corrective action," after the halt. *Id.* at 35, 51. Later that month, MMTLP shares were exchanged on a one-to-one basis for shares of NBH, which are not publicly traded. *Id.* at 30. As a result, many shareholders have been unable to trade their NBH shares or recover the fair value of their investments. *Id.* at 8, 16, 30.

Plaintiff brings several causes of action against the Commission including: (1) violations of the Securities Exchange Act (15 U.S.C. § 78); (2) negligence; (3) failure to oversee; (4) failure to supervise; (5) negligent or intentional infliction of emotional distress; and (6) various constitutional claims. (Doc. 12 at 71–80). On May 8, 2025, the Commission filed a Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 35). Plaintiff and the Commission filed their respective Response and Reply. (Docs. 43, 52). Accordingly, this matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for "lack of subject-matter jurisdiction." Under Rule 12(b)(1), "[l]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659

3

(5th Cir. 1996)). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. Furthermore, when a Rule 12(b)(1) motion is accompanied by the filing of another Rule 12 motion, the former should be considered before addressing attacks on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161.

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014)

4

(citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions."). "Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017).

### C. Rule 9(b)

Securities Exchange Act § 10(b) and Rule 10b-5 only provides a remedy for those victimized by securities fraud. "Fraud claims are subject to the heightened pleading standard of Rule 9(b), under which 'a party must state with particularity the circumstances constituting fraud.'" *Poe v. Bock*, No. CV-17-00232, 2018 WL 4677901, at *2 (W.D. Tex. June 11, 2018)

5

(quoting FED. R. CIV. P. 9(b)), *R. & R. adopted*, 2018 WL 4275839 (W.D. Tex. Sept. 7, 2018). The Fifth Circuit has interpreted this to mean a plaintiff "must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Stated differently, "[a] claim of fraud must allege the 'who, what, when, and where.'" *Big Thirst, Inc. v. Donoho*, 657 F. Supp. 3d 914, 924 (W.D. Tex. 2023) (quoting *Williams*, 112 F.3d at 178). Further, in securities fraud suits, the Private Securities Litigation Reform Act ("PSLRA") "reinforces the particularity requirements of Rule 9(b), requiring the plaintiffs to state not only the time, place, the identity of the speaker, and the content of the alleged misrepresentation, but also to explain why the challenged statement or omission is false or misleading. The PSLRA *also* requires that the complaint 'with respect to *each* act or omission alleged' to be false or misleading 'state with *particularity facts* giving rise to a *strong* inference that *the defendant* acted with the required state of mind.'" *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362–63 (5th Cir. 2004) (emphasis in the original) (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

### III.   DISCUSSION

#### A.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Commission argues this Court lacks subject matter jurisdiction over Plaintiff's claims against the Commission because Plaintiff does not have standing to bring his claims and sovereign immunity bars his claims. (Doc. 35 at 19).

##### i.   Standing

Article III of the United States Constitution limits federal courts' jurisdiction to cases and controversies. U.S. CONST. art. III § 2. "Among other things, that limitation requires a plaintiff to

6

have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295 (2022). "The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Id*. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). To meet the first element, the injury suffered must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). The traceability or causation requirement "does not require a party to establish proximate causation, but only requires that the injury be 'fairly traceable' to the defendant." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011) (citing *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)). Finally, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 181.

The Commission argues Plaintiff cannot establish the second and third elements of standing: causation and redressability. (Doc. 35 at 19–23). The Commission explains Plaintiff does not claim it unlawfully regulated (or failed to regulate) *him*. *Id.* at 20. The Commission specifies that any link between its alleged failure to regulate third parties—such as Brda, McCabe, and FINRA—and Plaintiff's economic injuries is too speculative and attenuated to show a causal connection. *Id*. Further, Plaintiff's only collectible relief would not redress any harms Plaintiff endured. *Id*. at 22–23. In his Response, Plaintiff argues his "financial losses from the MMTLP halt and fraud are concrete injuries" and that equitable relief would redresses said injuries. (Doc. 43 at 5). The Court agrees with the Commission.

Recently, the Supreme Court explained that "when (as here) a plaintiff challenges the government's 'unlawful regulation (or lack of regulation) of someone else,' 'standing is not

precluded, but it is ordinarily substantially more difficult to establish.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (quoting *Lujan*, 504 U.S. at 562). This is "often because unregulated parties may have more difficulty establishing causation—that is, linking their asserted injuries to the government's regulation (or lack of regulation) of someone else." *Id*. "When the plaintiff is an unregulated party, causation ordinarily hinges on the response of the regulated (or regulable) third party to the government action or inaction . . . ." *Id*. at 383 (quoting *Lujan*, 504 U.S. at 562) (internal quotations omitted). "Yet the Court has said that plaintiffs attempting to show causation generally cannot 'rely on speculation about the unfettered choices made by independent actors not before the courts.'" *Id*. (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 (2013)). However, this is exactly what Plaintiff has done here as it relates to the Commission.

Plaintiff claims that the Commission was aware of various irregularities ahead of the 2021 and 2022 transactions yet "took no action to prevent or investigate these irregularities." (Doc. 12 at 16). But any link between the Commission's actions or inactions to the harms Plaintiff suffered is far too attenuated to satisfy the second element of standing and create a causal connection. The Commission explains this:

> Even if the Commission would have brought an enforcement action, a court would have needed to rule in the Commission's favor. Even if a court ruled in the Commission's favor, the court would have needed to enjoin the fraud or order recompense for monetary losses. Similarly, even if the Commission had publicized its concerns about META II and/or MMTLP, Plaintiff would have had to decide not to invest or to exit his investment. And even if Plaintiff wanted to exit his investment, his ability to do so would have been dependent on finding a willing buyer *after* public concerns about fraud had been raised.

(Doc. 35 at 21). To establish causation here, the Court would need to "rely on speculation about the unfettered choices made by independent actors not before" it. *All. for Hippocratic Med.*,

8

602 U.S. at 383. The Court is unwilling to do so. *Id*. (holding "where the government action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing").

Even if there was a causal link here, Plaintiff's harms cannot be redressed by his claims against the Commission. Plaintiff seeks a variety of relief as it relates to the Commission: monetary damages, a declaration that the Commission violated various federal securities laws and that FINRA is unconstitutional, an injunction requiring the Commission to implement improved oversight mechanisms and to enforce its obligations under the Securities Exchange Act, and an Order mandating future reform. (Doc. 12 at 82–84). As discussed below, sovereign immunity bars Plaintiff's claims for monetary damages against the Commission, thus his injuries cannot be redressed. *Dee v. Granholm*, No. 23-1950, 2024 WL 4263831, at *4 (D.D.C. Sept. 23, 2024) ("If a claim is barred by sovereign immunity, it is not redressable.") (citing *Seed v. Env't Prot. Agency*, 100 F.4th 257, 265 (D.C. Cir. 2024)). Second, the remaining equitable relief Plaintiff requests would not redress his alleged remediable harm. *Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 107 (1998) ("By the mere bringing of his suit, every plaintiff demonstrates his belief that a favorable judgment will make him happier. But although a suitor may derive great comfort and joy from the fact that the United States Treasury is not cheated, that a wrongdoer gets his just deserts, or that the Nation's laws are faithfully enforced, that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury. Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.") (internal citations omitted). Thus, Plaintiff fails to establish the element of redressability.

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to standing be **GRANTED**. (Doc. 35). Because Plaintiff does not have standing to bring his claims against the Commission, these claims should be **DISMISSED WITH PREJUDICE**.

### ii.   Sovereign Immunity

Even if Plaintiff had standing, Plaintiff's claims against the Commission are barred by sovereign immunity. Sovereign immunity is jurisdictional in nature and deprives a court of subject matter jurisdiction. *See Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). "[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). Only Congress can consent to suit against the United States and "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted). Typically, in determining whether subject-matter jurisdiction exists, "[c]ourts must strictly construe all waivers of the federal government's sovereign immunity, [resolving] all ambiguities in favor of the sovereign." *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998). The plaintiff bears the burden of showing unequivocal waiver of sovereign immunity. *St. Tammany Parish, ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).

The Commission argues Plaintiff does not identify any statute that waives sovereign immunity over his claims. (Doc. 35 at 25). The Court agrees. In his Complaint, Plaintiff claims the Court has jurisdiction pursuant to 28 U.S.C. § 1331 for claims under the Securities Exchange Act, the Sherman Antitrust Act, the Clayton Act, and the United States Constitution, as well as

supplemental jurisdiction under 28 U.S.C. § 1367 for his state law claims. (Doc. 12 at 3). Crucially, general jurisdictional statutes such as 28 U.S.C. §§ 1331, 1367 do not waive sovereign immunity. *Smith v. Booth*, 823 F.2d 94, 97 (5th Cir. 1987); *Richardson v. FDA*, No. 08-CV-0209, 2008 WL 4393481, at *2 (N.D. Tex. Sept. 25, 2008); *Mocek v. City of Albuquerque*, No. CIV 11-1009, 2013 WL 312881, at *66 (D. N.M. Jan. 14, 2013); *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 201 (D.D.C. 2013).

In its Motion to Dismiss, the Commission notes Plaintiff does not identify any statute that purportedly waives sovereign immunity over his claims, but nevertheless addresses the Federal Tort Claims Act ("FTCA") and the Administrative Procedure Act ("APA") to demonstrate that neither apply to Plaintiff's claims. (Doc. 35 at 26–29). As the Commission explains, both these statutes can waive sovereign immunity, but they are inapplicable to Plaintiff's claims. *Id*.

To start, this Court does not have jurisdiction over the Commission because of the FTCA. "The FTCA waives sovereign immunity and permits suit against *the United States* for claims sounding in state tort law for money damages." *Cantu Silva v. United States*, 110 F.4th 782, 787 (5th Cir. 2024) (emphasis added). "It is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant in a Federal Tort Claims Act suit." *Naranjo v. Thompson*, No. 11-CV-105, 2017 WL 11638032, at *4 (W.D. Tex. Mar. 6, 2017); 28 U.S.C. § 1346(b) ("shall have exclusive jurisdiction of civil actions on claims *against the United States*, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . .") (emphasis added). The United States is not a party to this action. Instead, Plaintiff has chosen to bring suit against a federal agency. Because Plaintiff sued the agency and not the United States, the Court finds it does not have

jurisdiction arising out of the FTCA to hear Plaintiff's claims for money damages against the Commission.

Additionally, the APA does not waive sovereign immunity over Plaintiff's claims. Under § 702 of the APA, sovereign immunity is waived for claims seeking non-monetary damages when a person is "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. The Commission identifies two issues with waiving sovereign immunity under the APA for Plaintiff's claims: (1) § 702's waiver of sovereign immunity does not apply when the agency action is discretionary and (2) § 702's waiver of sovereign immunity only applies to Plaintiff's claims if an "agency action" harmed him. (Doc. 35 at 27–30). Here, Plaintiff does not cite § 702 of the APA, which can waive sovereign immunity for actions seeking non-monetary relief brought by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Even if Plaintiff had properly argued sovereign immunity is waived under the APA, the Court agrees that his claims should nevertheless fail under these principles.

First, § 702's waiver of sovereign immunity does not apply when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Throughout his Complaint, Plaintiff makes vague references to the Commission failing to investigate, regulate, and take enforcement actions. (Doc. 12 at 4, 21, 76, 77, 91). But the Commission has explicit discretion to investigate. 15 U.S.C. § 77t(a) ("Whenever it shall appear to the Commission, either upon complaint or otherwise, that the provisions of this subchapter, or of any rule or regulation prescribed under authority thereof, have been or are about to be violated, it may, *in its discretion*, either require or permit such person to file with it a statement in writing, under oath, or otherwise, as to all the facts and circumstances concerning the subject matter which it believes to

be in the public interest to investigate, and may investigate such facts.") (emphasis added). The Commission also "has broad authority to supervise, investigate, and discipline SROs [like FINRA] for wrongdoing." *Lanier v. BATS Exchange, Inc.*, 105 F. Supp. 3d 353, 364 (S.D.N.Y. 2015) (citing *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 101 (2d Cir. 2007)). Finally, the Supreme Court "has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Accordingly, § 702's waiver of sovereign immunity does not apply to Plaintiff's claims against the Commission. *See id*. at 838 ("The general exception to reviewability provided by § 701(a)(2) for action 'committed to agency discretion' remains a narrow one but within that exception are included agency refusals to institute investigative or enforcement proceedings, unless Congress has indicated otherwise.") (internal quotations omitted); *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984) ("It appears, in short, that Congress intended to vest the SEC with considerable discretion in determining when and how to investigate possible violations of the statutes administered by the Commission.").

Second, Plaintiff's complaints against the Commission do not constitute agency action. At best, Plaintiff alleges the Commission's inaction. While § 702 does contemplate an agency's failure to act, it is "properly understood as a failure to take an *agency action*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). And an agency action "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." 5 U.S.C. § 551(13). Plaintiff fails to allege the Commission did not take such an action. *Norton*, 542 U.S. at 63 (stating a failure to act is, "for example, the failure to promulgate a rule or take some decision by a statutory deadline"). Even to the extent Plaintiff makes claims regarding the

13

Commission's failures, they are entirely too vague and conclusory to be actionable. (*See, e.g.*, Doc. 12 at 4, 76) (stating the Commission failed to "enforce federal securities laws, prevent market manipulation, and reconcile share discrepancies"). Thus, the APA does not waive sovereign immunity for Plaintiff's claims, and the Court does not have subject matter jurisdiction over the Commission in this action.[2]

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to sovereign immunity be **GRANTED**. (Doc. 35). Because the Commission's sovereign immunity bars Plaintiff's claims, the claims should be **DISMISSED WITH PREJUDICE**.

### B.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Even if Plaintiff had standing and the Commission's sovereign immunity did not bar his claims, Plaintiff failed to state a claim for which relief can be granted.

> **i.    Negligence, Failure to Oversee, Failure to Supervise, Emotional Distress (Negligent or Intentional Infliction)**

In its Motion to Dismiss, the Commission addresses Plaintiff's Counts 2 and 6 (negligence), 8 (failure to oversee), 10 (failure to supervise), and 11 (emotional distress) together, stating each of these counts are premised on the notion that the Commission negligently breached its duty by failing to stop the Meta Materials frauds and by failing to properly supervise FINRA. (Doc. 35 at 32).

The Commission relies primarily on *Grady* to show its lack of duty to individual investors. *Grady v. United States*, No. 13-15C, 2013 WL 4957344 (Fed. Cl. July 31, 2013), *aff'd*, 565 F. App'x 870 (Fed. Cir. 2014). In *Grady*, a *pro se* plaintiff brought suit against the

---

2. The Commission makes an additional argument, asserting that to the extent Plaintiff is contending the Commission should have issued an order overturning FINRA's trading halt or should have reinstituted MMTLP trading, a Court of Appeals would have exclusive jurisdiction. (Doc. 35 at 31). As the Court has already found a lack of subject matter jurisdiction over the Commission due to its sovereign immunity and Plaintiff's failure to establish Article III standing, the Court need not discuss this additional or alternative argument.

Commission after sustaining a financial loss during a stock market "Flash Crash." *Id*. at *1. There, the plaintiff argued the 1934 Securities Act imposed a fiduciary duty on the Commission to investors to maintain "fair and orderly markets." *Id*. at *3. The Court found the Commission "has no such duty, however, because the statute does not establish any sort of trust relationship that benefits investors." *Id*. This Court follows *Grady*. Further, courts have refused to find the Commission owes a duty of care to individual investors, because if it did, the Commission "would become the guarantor of the investment decisions of individuals who choose to participate in regulated markets. While, undoubtedly, one function of the SEC is to protect the public from people [committing fraud], to impose an obligation on the government to expend the resources sufficient to uncover every wrong which could be discovered from a proper investigation is to impose an unlimited obligation on the government to spend its resources on such endeavors, whether or not fiscal policy concerns might require otherwise." *Baer v. United States*, No. 11-1277, 2011 WL 6131789, at *7 (D.N.J. Dec. 8, 2011).

In his negligence claim, Plaintiff alleges the Commission violated various sections of the Exchange Act by negligently failing to enforce federal securities laws and regulations and failing to prevent the creation and trading of synthetic shares. (Doc. 12 at 72, 75). Because the Commission does not owe a legal duty to Plaintiff as an investor, Plaintiff is unable to state a claim for negligence. *Hill v. Pepper Hamilton LLP*, No. 17-CV-021, 2017 WL 10841216, at *6 (W.D. Tex. May 31, 2017) ("[The plaintiff] fails to allege that [the defendant] owed him any legal duty, nor does he allege any facts from which the Court could infer that [the defendant] owed [the plaintiff] a legal duty."). Even if he had alleged a duty, Plaintiff did not plead sufficient facts to show that the Commission breached this duty.

15

In his claim against the Commission for failing to oversee, Plaintiff again alleges the Commission violated various sections of the Exchange Act by failing to fulfill its oversight duties and failing to intervene or investigate FINRA's imposition of the U3 trading halt; by neglecting its statutory duty to facilitate prompt and accurate clearance, settlement, and resolution of securities transactions impacted by the halt; and by failing in its statutory oversight duties over FINRA. (Doc. 12 at 76–77). Even setting aside that "failure to oversee" is not a cause of action Plaintiff can bring, the Court agrees with the Commission that any recognized claim Plaintiff would have standing to bring as it relates to the Commission's involvement with the halt would be derived from the Commission's duty to investors—a duty which does not exist. (Doc. 35 at 32–33).

The Court finds the same to be true for Plaintiff's claims for failure to supervise and negligent or intentional infliction of emotional distress. (Doc. 12 at 77) (alleging the Commission failed to monitor and address the proliferation of synthetic shares and unresolved failures to deliver, breaching their statutory supervisory obligations); (Doc. 13 at 78) (alleging the Commission knew or should have known their "misrepresentations" and "omissions" that created uncertainty about the status and value of Plaintiff's shares would cause significant emotional harm to investors). There is no duty or legal relation that exists between the Commission and Plaintiff, an individual investor, allowing him to bring such claims. Even if there were, Plaintiff fails to allege sufficient facts to state such claims.

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to Plaintiff's claims for negligence, failure to oversee, failure to supervise, and emotional distress (negligent or intentional infliction) be **GRANTED** (Doc. 35) for failure to state a claim and these claims should be **DISMISSED WITH PREJUDICE**.

ii.     **Securities Exchange Act § 10(b) and 17A**

Plaintiff also alleges the Commission violated Section 10(b) and Rule 10b-5 thereunder and Section 17A of the Exchange Act. (Doc. 12 at 79–80).

To start, "[s]ection 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the SEC may prescribe." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024) (internal quotations omitted). "Rule 10b–5 implements this prohibition and makes it unlawful for issuers of registered securities to 'make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *Id.* (quoting 17 C.F.R. § 240.10b–5(b) (2022)). The Supreme Court has interpreted Section 10(b) to provide a right of action to purchasers or sellers of securities injured by its violation. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318 (2007). "But the statutes make these latter actions available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

"To state a claim under § 10(b) of the Securities Exchange Act and SEC Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission;[3] (2) scienter (a 'wrongful state of mind'); (3) a connection with the purchase or sale of a security; (4) reliance; (5)

---

3. "Section 10(b), in proscribing the use of a 'manipulative or deceptive device or contrivance,' prohibits not only material misstatements but also manipulative acts." *ASTI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d. Cir. 2007). "Market manipulation requires a plaintiff to allege (1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *Id.* at 101. To the extent Plaintiff attempts to plead this theory in his Complaint, he is equally unable to meet the elements.

17

economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.'" *Mun. Emps.' Ret. Syst. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (quoting *Dura Pharm.*, 544 U.S. at 341–42). At most, Plaintiff merely alleges the Commission "failed to prevent and address manipulative practices, including synthetic share creation, naked short selling, and failures to deliver, which violated Section 10(b) and Rule 10b-5." (Doc. 12 at 79.) Such allegations are wholly conclusory and insufficient to state a claim.

Plaintiff also alleges all Defendants, including the Commission, violated Section 17A of the Exchange Act. (Doc. 12 at 80). However, this provision lacks a private right of action. *See, e.g.*, *Riggs v. Schappel*, 939 F. Supp. 321, 332 (D.N.J. 1996) (holding the "argument that section 17A contains a private right of action must be rejected"); *Ahr v. Raymond James & Assocs., Inc.*, No. 08-CV-507, 2008 WL 11351382, at *4 (S.D. Ohio Oct. 9, 2008); *Stephenson v. Paine Webber Jackson & Curtis, Inc.*, 839 F.2d 1095, 1100 (5th Cir. 1988) (Section 17(a)).

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to Plaintiff's claim for violation of the Securities Exchange Act § 10(b) and Rule 10b-5 and claims under Section 17A of the Exchange Act be **GRANTED** (Doc. 35) for failure to state a claim and these claims should be **DISMISSED WITH PREJUDICE**

### iii.    Constitutional Claims

Plaintiff also asserts constitutional claims including alleged violations of the nondelegation doctrine, the Fifth Amendment's Due Process Clause, and Article II's Appointments Clause. (Doc. 12 at 38, 81).

The Commission first argues Plaintiff lacks standing and the Court should dismiss Plaintiff's claim that "Congress delegate[ed] . . . quasi-legislative authority to FINRA under the Exchange Act in violation of the private nondelegation doctrine." (Doc. 12 at 42). The Court

18

agrees. In this case, Plaintiff does not allege a personal, concrete, and particularized injury arising from these alleged structural defects. *See Lujan*, 504 U.S. at 556 ("This Court has consistently held that a plaintiff claiming only a generally available grievance . . ., unconnected with a threatened concrete interest of his own, does not state an Article III case or controversy."); *see also Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013). As FINRA "function[s] subordinately" to the Commission, which wields "authority and surveillance over" FINRA's activities, Plaintiff raises generalized challenges to FINRA's institutional authority and structure. (*See* Doc. 12 at 38, 81). Specifically, Plaintiff contends "the structure and authority of Defendant FINRA are unconstitutional under the Appointments Clause, Nondelegation Doctrine, and Due Process Clause of the U.S. Constitution" and asks the Court to declare "FINRA's imposition of the indefinite U3 trading halt on December 9, 2022 . . . deprived Plaintiff and other investors of their constitutional rights." *Id.* at 82. Such allegations are insufficient to confer Article III standing. A plaintiff "raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws . . . does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74. Such allegations are "precisely the kind of undifferentiated, generalized grievance" that is not redressable in federal court. *Lance v. Coffman*, 549 U.S. 437, 442 (2007).

Plaintiff's Fifth Amendment' due process claim independently fails for an additional reason. The Fifth Amendment's Due Process Clause guarantees that persons will not "be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. However, Plaintiff does not provide any facts to support the notion that the Commission deprived him of property. Plaintiff does not allege that he no longer owns his shares, rather, he complains about difficulty trading them. (Doc. 12 at 60). Even if that could constitute a taking of

19

property, the shares exchange was done by the company, not the government, and the company's actions are not attributable to the government. *See, e.g., Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) (holding a private entity's actions can be attributed to the government in only "a few limited circumstances" none of which are applicable here). Thus, the Commission did not violate Plaintiff's Fifth Amendment rights.

Lastly, the Commission challenges Plaintiff's allegation that "FINRA's governance structure" violates the Appointments Clause. (Doc. 35 at 36–38). The Appointments Clause in Article II of the Constitution governs the manner of appointing "Officers of the United States." U.S. CONST. art. II, § 2, cl. 2. However, it does not govern the selection of private executives or board members of a private corporation outside the government and FINRA is a private entity that is not part of the federal government. *See Desiderio v. Nat'l Assoc. of Secs. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999) ("Indeed, we have already ruled that the New York Stock Exchange—a self-regulatory private organization like the NASD [FINRA's predecessor]—is not a state actor."); *Mohlman v. Fin. Indus. Regul. Auth., Inc.*, No. 19-CV-154, 2020 WL 905269, at *6 (S.D. Ohio Feb. 25, 2020) (collecting cases) ("Courts have held without exception that FINRA is a private entity and not a state actor."). Nor does FINRA fall within the narrow category of nominally private corporations deemed "part of the Government" for constitutional purposes recognized under *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 397–400 (1995). FINRA was not created by the government, and the government does not retain permanent authority to appoint a majority of its directors. *See id.*; *see also Scottsdale Cap. Advisors v. FINRA*, 678 F. Supp. 3d 88, 103 (D.D.C. 2023). Because FINRA is not part of the federal government under *Lebron*, Article II's Appointments Clause does not apply, and Plaintiff's Appointments Clause claim should be dismissed.

20

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to Plaintiff's constitutional claims be **GRANTED** (Doc. 35) for failure to state a claim, and these claims should be **DISMISSED WITH PREJUDICE**.

### iv.    Request for Systematic Reforms

As additional relief, Plaintiff requests this Court issue an injunction requiring FINRA and the Commission to "implement improved oversight mechanisms to prevent future violations of the federal securities laws" and "implement systemic reforms to prevent future abuses." (Doc. 12 at 83–84). The Commission argues Plaintiff's request should be dismissed because courts cannot issue such vague, overly broad declarations. (Doc. 35 at 41). The Court agrees, and it has been given no reason to issue such relief. Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to Plaintiff's request for an injunction be **GRANTED** (Doc. 35) and this request be **DENIED**.

### C.  Plaintiff's Request for Leave to Amend

In his Response, Plaintiff requests the Court grant him leave to amend his Second Amended Complaint. (Doc. 43 at 10). Federal Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Rule 15(a) "favors granting leave to amend unless a substantial reason exists, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Smith v. McDonough*, No. 22-CV-01383, 2023 WL 5918322, at *9 (W.D. Tex. Sept. 8, 2023) (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)); *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) ("While it is true that the court should freely give a party leave to amend its pleadings when justice so requires, such leave is not required where, as here, the movant

contends that his pleadings sufficed to state a . . . claim throughout his briefing in opposition to the Rule 12[(b)(6)] motion and fails to apprise the district court of the facts that he would plead in an amended complaint, if necessary, to cure any deficiencies.") (internal citations, quotations and alterations omitted). Based on this rationale, courts typically provide plaintiffs with the opportunity to amend a complaint before dismissal; however, dismissal "is appropriate when the plaintiff was previously provided ample opportunity to cure the deficiencies." *Id*. (citing *Foman v. Davis*, 371 U.S. 182, 182 (1962); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

In this case, Plaintiff has amended his Complaint once as of right and once more with leave of Court. (Docs. 3, 12). Further, Plaintiff makes only a cursory mention of his request to amend, does not state the substance of his proposed amendment, nor does he attach an amended complaint for the Court. (Doc. 43). Plaintiff also asserts the Second Amended Complaint already refined his case to present "clear and well-supported claims" and that he made "substantial revisions to clarify claims, streamline allegations, and strengthen legal arguments to comply with federal pleading standards." (Doc. 8 at 1–2). Accordingly, the Court finds Plaintiff has been given ample opportunity to cure deficiencies in his pleadings and that further amendment would be futile. *See Smith*, 2023 WL 5918322, at *9. Thus, the Court **RECOMMENDS** Plaintiff's request to amend his complaint be **DENIED**. (Doc. 43).

## IV.    RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** the Commissions Motions to Dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(1) and, alternatively 12(b)(6), be **GRANTED**. (Doc. 35). Further, the Court **RECOMMENDS** Plaintiff's claims as to the Commission for violation of the Securities Exchange Act, negligence, failure to oversee, failure

22

to supervise, negligent or intentional infliction of emotional distress, and constitutional violations

be **DISMISSED WITH PREJUDICE**. Finaly, the Court **RECOMMENDS** Plaintiff's requests

for an injunction and leave to amend be **DENIED**.

SIGNED this 30th day of January, 2026.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

23

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).