IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| MATTHEW J. PEASE,<br><br>Plaintiff,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION, FINANCIAL INDUSTRY REGULATORY AUTHORITY, JOHN BRDA, GREGORY MCCABE, NEXT BRIDGE HYDROCARBONS, INC.<br><br>Defendants. | Case No.: 7:24-CV-00322-DC-RCG |

**PLAINTIFF'S OBJECTIONS TO
THE MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS**

1. Plaintiff Matthew J. Pease, proceeding pro se, respectfully submits the following objections to the Magistrate Judge's Reports and Recommendations ("R&Rs") entered on January 30, 2026, pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b).

2. These objections address the R&Rs at Docket Nos. 104 (Brda and McCabe), 105 (FINRA), 106 (NBH), and 107 (SEC). Plaintiff requests de novo review of the objected-to portions. See 28 U.S.C. § 636(b)(1).

3. For the reasons set forth below, Plaintiff respectfully requests that the Court: (a) reject the R&Rs; (b) alternatively modify them to deny dismissal with prejudice and permit this

1

action to proceed past the pleading stage; or (c) in the further alternative, dismiss without prejudice and allow one final amendment within a reasonable time.

4. These objections focus on specific legal errors in the R&Rs, including misapplication of Article III standing principles, erroneous treatment of FINRA as categorically private for constitutional purposes, improper extension of sovereign immunity to bar ultra vires claims against the SEC, and denial of leave to amend without adequate consideration of curability.

5. Plaintiff preserves these issues for appellate review. See *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1420–21 (5th Cir. 1996) (en banc). Plaintiff incorporates prior briefing solely to avoid repetition and to focus these objections on the Magistrate Judge's legal conclusions.

## I. BACKGROUND AND PROCEDURAL POSTURE

6. This case arises from the June 2021 reverse merger of Torchlight Energy Resources, Inc. into Meta Materials, Inc., and the contemporaneous spin-off of Torchlight's oil and gas assets into Next Bridge Hydrocarbons, Inc. ("NBH"). (SAC at 11; R&R Dkt. 104 at 2; R&R Dkt. 106 at 2.)

7. As part of that transaction, shareholders, including Plaintiff, received Non-Voting Series A Preferred Shares designated as MMTLP, intended to represent private ownership in NBH and not to trade publicly. (SAC at 10–12, 16.)

8. Despite that stated intent, MMTLP began trading on the over-the-counter market in October 2021. Plaintiff alleges that this trading occurred without proper authorization and was accompanied by synthetic share creation, naked short selling, and significant market distortion. (SAC ¶¶ 13, 19, 32–33.)

9. On December 9, 2022, FINRA imposed a U3 trading halt on MMTLP without advance notice. (SAC ¶¶ 6, 30; R&R Dkt. 105 at 2.) Plaintiff alleges that the halt foreclosed his ability to sell, liquidate, or otherwise exercise market exit rights.

10. The SAC asserts claims under Section 10(b) and Rule 10b-5, constitutional provisions, and related statutory and common-law theories. The Magistrate Judge recommended dismissal of all claims with prejudice and denial of leave to amend. (R&Rs at Dkt. Nos. 104–107.)

## II. OBJECTIONS TO THE STANDING ANALYSIS

11. The Magistrate Judge committed material legal error in concluding that Plaintiff lacks Article III standing. See R&R Dkt. 107 at 7–12; R&R Dkt. 105 at 10–13; R&R Dkt. 106 at 7–9; R&R Dkt. 104 at 8–11. The R&Rs treat Plaintiff's injuries as speculative or derivative and collapse injury, causation, and redressability into a generalized conclusion of attenuation.

12. That analysis misapplies *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), and *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), and overlooks concrete economic and procedural harms alleged in the SAC.

**A. Injury-in-Fact**

13. The SAC alleges concrete, particularized economic harms, including loss of liquidity, loss of alienability, and loss of market exit following the U3 halt. (SAC ¶¶ 6, 8, 30, 81.) These are property-based injuries affecting Plaintiff individually as a shareholder.

14. Under *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021), economic harms such as diminished asset value and interference with property rights are quintessentially concrete.

3

      Plaintiff alleges precisely that type of injury: the inability to access, sell, or realize value in shares due to affirmative regulatory intervention.

15. Plaintiff does not assert a pure "holder claim" under *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), nor does he seek recovery for speculative opportunity costs. Rather, he challenges the deprivation of alienability and market exit caused by regulatory action. That deprivation arose from the U3 halt itself and was not the product of voluntary retention decisions.

16. In addition, Plaintiff alleges procedural injury—deprivation of property without notice or opportunity to be heard—arising from the abrupt halt. (SAC ¶¶ 30, 81.) Procedural due process violations constitute independently cognizable injury. See *Carey v. Piphus*, 435 U.S. 247, 266 (1978).

### B. Causation and Traceability

17. The R&Rs characterize Plaintiff's alleged injuries as the result of an extended chain involving third-party market participants. See, e.g., R&R Dkt. 107 at 10–11. However, traceability requires only that injury be fairly traceable to the challenged conduct, not that the defendant be the sole or proximate cause. *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

18. The SAC alleges that Defendants' actions—including structuring of the spin-off, regulatory decisions, and the U3 halt—directly enabled and predictably produced the loss of liquidity and market exit. (SAC ¶¶ 13, 30, 35.) That is sufficient at the pleading stage.

### C. Redressability

19. The R&Rs further conclude that Plaintiff's injuries are not redressable because relief would not guarantee recovery. See R&R Dkt. 107 at 11–12. Redressability, however,

requires only that relief be likely to alleviate the injury, not that it ensure a particular financial outcome. Lujan, 504 U.S. at 561.

20. Plaintiff seeks declaratory and equitable relief addressing ongoing structural barriers to liquidity and alienability. Such relief would remove impediments created by the challenged regulatory action. In addition, monetary relief for lost liquidity would directly compensate the economic injury alleged.

### III. <u>OBJECTIONS TO THE FINRA STATE-ACTOR ANALYSIS</u>

21. The Magistrate Judge concluded that FINRA is not a state actor for purposes of Plaintiff's constitutional claims. See R&R Dkt. 105 at 13–16. That conclusion rests on pre-Jarkesy precedent and treats FINRA as categorically private without engaging the nature of the authority exercised in this case.

22. Plaintiff does not ask this Court to disregard binding precedent. Rather, Plaintiff objects to the categorical treatment of FINRA as purely private where coercive regulatory authority was exercised in a manner that directly affected property rights.

**A. FINRA's Exercise of Coercive Regulatory Authority**

23. FINRA is a self-regulatory organization registered under 15 U.S.C. § 78o-3. It operates pursuant to authority delegated under the Securities Exchange Act and subject to SEC oversight and approval. (R&R Dkt. 105 at 2.)

24. The U3 halt was not a private contractual action. It was a market-wide regulatory intervention that immediately deprived shareholders of the ability to sell, liquidate, or otherwise exercise market exit rights. (SAC ¶ 30.)

25. State action exists where a private entity performs a public function, is entwined with government, or exercises coercive power under color of law. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96 (2001).

26. FINRA's authority to halt trading in a national securities market, subject to SEC oversight and grounded in federal statute, is not analogous to private arbitration agreements at issue in *Desiderio v. NASD*, 191 F.3d 198 (2d Cir. 1999). That case did not involve market-wide regulatory intervention affecting property rights.

27. Plaintiff acknowledges that reasonable jurists may disagree on the scope of FINRA's status under existing precedent. However, Plaintiff objects to the conclusion that FINRA's conduct here can be treated as purely private without regard to the coercive nature of the halt and the statutory framework authorizing it.

**B. Post-Jarkesy Developments**

28. In *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024), the Supreme Court emphasized constitutional limits on delegated enforcement authority. While Jarkesy addressed SEC administrative proceedings, it reinforces the principle that exercises of executive power are subject to constitutional scrutiny.

29. The R&R does not meaningfully engage whether FINRA's halt authority, exercised pursuant to federal delegation and SEC oversight, implicates similar separation-of-powers concerns.

30. Plaintiff does not seek a merits ruling at this stage. Rather, Plaintiff objects to the categorical dismissal of constitutional claims without full consideration of whether FINRA's exercise of delegated regulatory power may constitute state action in this factual context.

## IV. OBJECTIONS TO THE SOVEREIGN IMMUNITY AND ULTRA VIRES ANALYSIS

31. The Magistrate Judge concluded that sovereign immunity bars all claims against the SEC. See R&R Dkt. 107 at 13–18. Plaintiff objects to that conclusion because it does not address the ultra vires exception or the Administrative Procedure Act's waiver for non-monetary relief.

**A. Ultra Vires Exception**

32. Sovereign immunity does not shield officials or agencies acting beyond statutory authority or in violation of the Constitution. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689–90 (1949).

33. The SAC alleges that the SEC failed to perform mandatory supervisory duties imposed by statute, including oversight of self-regulatory organizations under 15 U.S.C. § 78s and enforcement-related obligations under the Exchange Act. (SAC ¶¶ 35, 51, 76.)

34. Plaintiff does not seek to compel prosecutorial discretion or to dictate enforcement priorities. Instead, Plaintiff challenges the absence of oversight where Congress imposed affirmative, non-discretionary supervisory obligations.

35. *Heckler v. Chaney*, 470 U.S. 821 (1985), addresses discretionary enforcement decisions. It does not foreclose review where a plaintiff alleges failure to carry out mandatory statutory duties. See *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66 (2004).

**B. APA Waiver and Prospective Relief**

36. The Administrative Procedure Act waives sovereign immunity for actions seeking non-monetary relief against federal agencies. 5 U.S.C. § 702.

37. Plaintiff seeks declaratory and injunctive relief addressing alleged statutory and constitutional violations. Such claims fall within the APA's waiver where they challenge agency action unlawfully withheld or taken without observance of required procedures.

38. The R&R does not fully engage this waiver framework before concluding that sovereign immunity bars all claims. Plaintiff respectfully submits that such categorical treatment is premature at the pleading stage.

## V. **OBJECTIONS TO THE DENIAL OF LEAVE TO AMEND**

39. The Magistrate Judge denied leave to amend and recommended dismissal with prejudice. See R&R Dkt. 107 at 22–23; similar conclusions appear in the remaining R&Rs. Plaintiff objects to that ruling.

40. Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely given when justice so requires. See *Foman v. Davis*, 371 U.S. 178, 182 (1962).

41. For pro se litigants, courts are especially cautious before foreclosing amendment where defects may be curable. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

42. The R&Rs conclude that amendment would be futile without reviewing a proposed amended complaint or fully assessing whether additional factual clarification could cure identified deficiencies.

43. At a minimum, Plaintiff should be afforded one final opportunity to address pleading concerns, particularly where dismissal with prejudice would terminate the action at the threshold.

## VI. **RELIEF REQUESTED**

44. Plaintiff respectfully requests that the Court conduct de novo review of the objected-to portions of the R&Rs.

45. Plaintiff further requests that the Court:

    a. Reject the R&Rs in full;

    b. Alternatively, modify the R&Rs to deny dismissal with prejudice and permit this action to proceed past the pleading stage; or

    c. In the further alternative, dismiss without prejudice and permit one final amendment within a reasonable time.

Dated: February 11, 2026

/s/ Matthew J. Pease
Matthew J. Pease
Pro Se Plaintiff
1 Cobbler Lane
Amherst, NH 03031

CERTIFICATE OF SERVICE

I certify that on February 11, 2026, a true and correct copy of the foregoing filing was served on all counsel of record via the Court's CM/ECF system.

 /s/ Matthew J. Pease
Matthew J. Pease